ANNA M. MORRELL ET AL., APPELLEES, V. JOHN W. TOWLE, APPELLANT.

3 N. W. (2d) 655

FILED MAY 1, 1942. No. 31306.

Clarence T. Spier, for appellant.

Baird & Baird and R. B. Hasselquist, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

This is an action brought on March 24, 1933, to recover the amount alleged to be due for rent accrued under a 99-year lease on certain property in the city of Omaha. Thereafter in April, 1933, the defendant Towle brought an action as plaintiff under the declaratory judgment act against the lessor, Morrell, resulting in the judgment of this court on July 9, 1935, holding that an assignment of a part of the leasehold was valid and that Towle was not liable for rents accruing on such part of the leasehold estate for the unexpired term of the lease. See Towle v. Morrell, 129 Neb. 398, 261 N. W. 827, which should be read at this point by any one studying this decision. Thereafter this action progressed as recited later herein. The action was tried as an equity action in 1937. A decision was delayed until 1941 when judgment was rendered for the plaintiffs and against the defendant and the intervener. Morrell, who was the original plaintiff, died December 31, 1937, and this action was revived in the names of the executrix and executor of his estate. From that judgment the defendant Towle appeals.

There is no question presented as to the amount of the

judgment. The sole question presented is whether or not Towle is liable for rent in any amount.

The factual situation presented by this litigation cannot be briefly stated. It requires an extended review of the evidence in this case as well as the record in two other cases involving this same subject-matter.

Morrell was the owner of the property here involved, which had a frontage of 80 feet on Twenty-fourth street in Omaha, together with what appears to be a claim to a 13-foot alley. On March 31, 1919, he entered into a 99-year lease of the property with Rose C. Gentleman. The conditions of that lease, important here, are set out in *Towle v. Morrell, supra.* On the following day Rose C. Gentleman assigned this lease to Ernest Sweet. The validity and effect of this assignment do not appear to be questioned.

Sweet entered into possession of the premises and constructed four one-story business buildings on the premises, each with a front of 20 feet. He apparently became short of funds and borrowed $6,000 from Edwin S. Towle, father of defendant John W. Towle, and secured the loan by a mortgage on his leasehold interest. The defendant seems to have negotiated the making of that loan.

October 13, 1925, Morrell notified both Sweet and Towle that because of a default in the payment of rent and taxes as provided by the lease "in case said defaults or either of them shall continue ninety (90) days * * * said lease and all of your rights including rights of possession of said property shall at once cease and terminate."

Thereafter negotiations between Sweet and defendant Towle were had resulting in a written agreement dated January 12, 1926, whereby Towle agreed to pay ground rents, taxes and special assessments in the sum of $6,700 due on the premises and Sweet agreed to convey to Towle *with covenants of general warranty* all of his right, title and interest in and to the 99-year lease "and the leasehold interest therein created," subject to the taxes, special assessments and ground rents above referred to and the Edwin S. Towle mortgage. Towle agreed to pay the then due ground rent,

taxes and special assessments and "keep an accurate account thereof." Towle was given the right to place the property in the hands of an agent for rental, or sale provided a purchaser could be found at a price not less than the total amount of encumbrances then against the property plus any sums paid by Towle, with interest, plus agent's commissions. It was further provided that out of rent moneys collected the rental agent should first deduct his commission, then the ground rents should be paid, then taxes and special assessments, then interest on the Edwin S. Towle mortgage, then Towle was to be paid 7 per cent. interest on the money he had advanced. Any sums left in the hands of the rental agent after paying the above items and necessary repairs were to be equally divided between Sweet and Towle. It was further provided that if the rents received were insufficient to pay the above items (excluding payments of interest to Edwin S. Towle and defendant) then defendant Towle agreed to advance such sums as were necessary to "be added * * * to his *investment* in said property and said lease and leasehold" together with 7 per cent. interest. In case of sale it was provided that the proceeds should be distributed as follows (after paying agent's commissions): First, the payment of the Edwin S. Towle mortgage and interest unless assumed by the purchaser; second, all other liens, unless assumed by the purchaser; third, all sums paid and advanced by Towle, and the residue to be divided between Sweet and Towle on a sliding scale basis. Towle's share was to increase from 12½ per cent. if sold within three months to 50 per cent. if not sold until more than a year from the date of the contract. It was further provided that no sale of the "lease or leasehold" could be made prior to five years from the date of the contract for a sum less than the total of all liens and interest existing against the property plus the total amount of Towle's "investment" therein remaining unpaid, unless agreed upon by Sweet and Towle. After five years Towle had the right to "convey said lease and leasehold" on such terms as he determined upon. The contract was executed, witnessed and acknowledged by the parties on

January 13, 1926. It does not appear to have been placed of record, nor is there any evidence, except the following, that its provisions were made known to Morrell. Towle testified that Morrell and his daughter came to his office, at Towle's request, and Towle explained to them that he "was going to take over, as trustee, the management of this property." This appears to have been before the agreement between Sweet and Towle. Later, on direct examination, he testified that he told them of his interest in the property on account of his father's mortgage, that he would put up the $6,700 and "that I was going to handle the matter from there on." Still later, on direct examination, he said that he told them that he "had made this deal" with Sweet, was to take over the management of the property, "would collect the rents and so far as the money was available would remit to them for their leasehold rentals and take care of the taxes." This testimony evidently all relates to the same conversation had on January 13, 1926, as the date is finally fixed. Morrell gave a receipt dated January 13, 1926, for $2,075, the ground rent due as of July 1, 1925, with interest. On cross-examination Towle was asked, "You testified to this conversation you had January 13, 1926; did you tell Mr. Morrell for whom you were trustee? A. Well, I don't recall the conversation took any such trend as that. I simply told him I had made arrangements with Mr. Sweet to take over the management of that property, and I would collect the rents, pay the taxes, and so far as funds were available would pay them their leasehold," and Morrell "didn't object." Morrell testified that he could remember no such occurrence, and the daughters denied positively that they were ever in Towle's office, although the giving of the receipt is not questioned.

Also on January 13, 1926, Sweet and wife, by instrument entitled "Assignment of Lease," conveyed with covenants of title and warranty their interest in the lease and leasehold to Towle. This instrument provided that Towle "hereby accepts the said transfer and assignment, and accepts and assumes all the terms and covenants in the said lease contained to be kept and performed by the lessee, and agrees

to comply with, be bound by, and perform each and every of the said agreements by the said lessee to be performed." The Sweets and Towle signed this instrument. The Sweets acknowledged it; Towle, on the advice of his then attorney, did not. Towle testified that he did not record the instrument; however, it was filed for record on January 13, 1926. In this connection it is noted that the plaintiff in *Frankfurt v. Neon Radiant Sign Co.*, 129 Neb. 405, 261 N. W. 830, to which reference wi . be made later herein, alleged in his petition that Towle caused this agreement "to be recorded," and that Towle in his answer in that action admitted that allegation (among others) to be true.

Thereafter Towle entered into possession of the premises and rented and otherwise dealt with them.

Something over a year after these events occurred, Towle was instrumental in organizing a corporation known as Dutch Cleaners. On May 21, 1927, for the recited consideration of $8,541.79 (which actually was $8,000 in the common stock of the Dutch Cleaners), Towle and wife assigned their interest in this lease as to the north 40 feet of the property to the Dutch Cleaners, Inc. By that instrument Towle and wife covenanted that they were lawfully seised of the leasehold, that it was free of encumbrances, except taxes and special assessments which the corporation assumed, and except the Edwin S. Towle mortgage, one-half of which the corporation assumed and agreed to pay. The instrument contained a warranty of title. The corporation agreed to pay one-half of the ground rent. The taxes were thereafter divided on the records so that those assessed against the north half were carried in the name of the Dutch Cleaners and those on the south half assessed either against the property as owned by Sweet or Towle. (Towle did not know which.) The Dutch Cleaners then further improved the property, and it appears, with some delays, paid the ground rents to Morrell direct until 1932 when they became seriously delinquent. Towle offered to pay the delinquent rents on the south half of the property. Morrell insisted that payments be credited as against all the delinquencies,

and the question arose as to whether Towle was liable for the rent on that part of the premises assigned to Dutch Cleaners. That controversy resulted in the beginning of the present action by Morrell, the bringing by Towle of the action *Towle v. Morrell, supra,* and Towle's claiming for the first time in writing that he was a trustee and not an owner, by assignment, of the leasehold.

Additional evidence bearing on the question of Towle's contention that he was a trustee of the property for Sweet should be recited. June 17, 1926, Sweet wrote Towle asking if he would be willing to pay certain "old bills" against the property (not included in the agreement of January 13, 1926) provided Sweet surrendered all claims to the property; Sweet recited that he did not think he should pay them "if you get the property." June 22, 1926, Towle replied that taxes and ground rent would be due the next week totaling $3,691.61, that those payments would "run the property beyond its actual value," and "I am not going to take more of a loss on this than is necessary." August 2, 1926, Sweet replied, referring to Towle "as owner of the property," suggested certain improvements, and that "some fine morning * * * you will wake up to the realization that you have acquired a real piece of property," and offering to surrender "my contract as sales agent and all rights" for $5,000. Sweet asked for the amount Towle and his father had invested in the property. Sweet again referred to the old bills, asked Towle to pay them, and that it be adjudicated "when the property is sold or traded." August 6, 1926, Towle replied, refused to put up any more money, as "it looks like a loss for me;" that he had had to put up money to protect his father's loan; that he believed Sweet should "take back this property;" that neither one of them had a "nickel's worth of equity" in the property. Beginning on August 5, 1926, Towle also wrote a number of letters to Morrell, transmitting rents due or delinquent and explaining delays. September 10 he said: "You must surely understand that there is practically no income on this property at this time and that what I pay you has to come from some-

where else." A similar statement is found in a letter of January 6, 1927, including, "In taking this property over *from* Mr. Sweet * * * I did not realize the real situation." December 31, 1927, and July 16, 1928, and January 1, 1931, and January 2, 1932, he recited that Dutch Cleaners would make or had made remittances. In a letter to Mr. Morrell's attorney dated January 5, 1928, Towle said, "My position is that I am merely a *temporary owner* of the title to that leasehold" and "I should think that you would appreciate the fact that *I agreed to underwrite this rent* of Adam Morrell at a time when the property was not paying one-fourth of the income he received from me." (Emphasis supplied.) On January 7, 1933, Towle wrote Morrell that he was "pressed for funds" and asked if he could remit $500 quarterly. He asked Morrell to consent to a revaluation and stated that "changed conditions since this lease was drawn have made this a very unreasonable and unfair document. I came into this proposition more in the capacity of a trustee in order to protect a mortgage Mr. Sweet had given against this leasehold." January 20, 1933, Towle wrote Morrell disclaiming responsibility for the Dutch Cleaners payments and stating: "By advancing private funds I have been keeping up the taxes and rental on that portion which I took over as trustee for certain interests." He again recited that the property did not justify one-fourth the amount of the lease, that the lease should be rewritten and an adjustment made "not only with me but with the Dutch Cleaners." February 14, 1933, Towle wrote Morrell: "I will continue paying you on that part of the lease that I still have, which was taken over by me as trustee until further notice." He again charged that the lease was not "a fair document," that there should be a revaluation and that that would "solve the difficulty." On December 30, 1933, the date of the decree in the district court in *Frankfurt v. Neon Radiant Sign Co, supra* (referred to later herein), Towle abandoned the property, did not advise Morrell of that fact, and did not assign his interest to any one.

Before stating the issues in the instant case, it seems ad-

visable to examine into and determine the issues presented and decided in *Towle v. Morrell, supra,* from the pleadings and decree offered in evidence in this case; and in *Frankfurt v. Neon Radiant Sign Co., supra.*

In *Towle v. Morrell, supra,* Towle pleaded that Morrell was the owner in fee of the premises; that he entered into a 99-year lease with Rose C. Gentleman on March 31, 1919, for a stipulated annual rental; that thereafter on April 1, 1919, Gentleman assigned her interest in the leasehold to one Sweet; that thereafter on January 13, 1926, Sweet executed a purported assignment to Towle as assignee; that said assignment was incomplete, not in accordance with the requirements of the lease, and invalid; that it was not intended by Towle or Sweet as a "definite transfer," but that Towle held Sweet's interest "as trustee, as additional and collateral security for a mortgage indebtedness" due and owing by Sweet to Towle's father; that the Morrells were not parties to said transaction nor was it made for their benefit; that on May 21, 1927, Towle assigned his interest in the north half of the premises to Dutch Cleaners, Inc.; that by paragraph 7 of the lease between Gentleman and Morrell, Gentleman or her assigns had power to assign to a responsible party, providing there was no delinquency and that such assignment "shall be evidenced in writing, duly executed and acknowledged by the assignor and assignee" (paragraph 7 is set out in opinion in *Towle v. Morrell, supra*); that subsequent to the assignment the property had been improved to the extent of $50,000; that part of the improvements were there before the "purported assignment" to Towle by Sweet; that controversy had arisen regarding the liability of the plaintiff, the plaintiff contending that the transfer from Sweet to him never was intended to be an assignment of the leasehold and did not operate as such; that the improvements placed on the premises extinguished the liability of those "lessees or assignees or persons in possession" when their possession "terminated or was transferred;" that the plaintiff desired to have the question of "construction and liability determined." The 99-year lease,

the assignment from Gentleman to Sweet, and the "Assignment of Lease" from Sweet and wife to Towle (acknowledged before a notary by the Sweets but not by Towle) were attached as exhibits. The contract between Sweet and Towle was not attached or pleaded.

The prayer of Towle's petition was for the court to construe and interpret the terms of the lease with respect to the facts, and that the "purported assignment" of Sweet to plaintiff be held ineffective and void to transfer the interest of Sweet to plaintiff "so far as the defendants and the premises are concerned," and that it was intended as security "in the hands of plaintiff as trustee," and "that this plaintiff be absolved from any and all liability whatever with respect to said lease by reason of said purported assignment, *or, in the alternative,* to determine that, if this plaintiff is liable in any degree," it "extends to and is limited specifically" to that portion of the premises which plaintiff had not conveyed to Dutch Cleaners.

Morrell's answer set up the amount of rent due on the lease and the pendency of the action, *Morrell v. Towle* (the instant suit) ; admitted the execution and assignment of the lease by Sweet to Towle, that Towle entered into the possession and control of the premises and has had the use and benefits therefrom; and pleaded estoppel. Morrell prayed that the assignment by Sweet to Towle be held to be in full force and effect, that Towle was liable thereon for the full performance of all the terms of the lease.

The trial court limited its findings to a construction and interpretation of paragraph 7 of the 99-year lease and held that it meant a "total and not a partial" assignment; that the erection of improvements upon the leasehold "to the value of, or in excess of, $25,000 extinguishes the liability of the lessee or assignees of the lessee or persons in possession of said premises, when and as of the time their actual possession of said premises terminates or is transferred and the lease is assigned in accordance with paragraph 7 of said lease," and that "the plaintiff is and has been, since January 13, 1926, in possession of the premises described in the lease

\* \* \* *as assignee thereof, which assignment is valid and ef-fective."* (Emphasis supplied.)

The trial court decreed that "An assignment of said lease as a whole but not in part" was permitted, and "that when improvements had been erected upon the leasehold property to the value of $25,000 such improvements constituted secur-ity for the lease and extinguished the liability of the lessee \* \* \* when and as of the time their actual possession of said premises terminates or is transferred and the lease is as-signed in accordance with the conditions in paragraph 7 of said lease." It is noted that the decree does not include in the adjudication the finding that Towle had been in posses-sion of the premises "as assignee thereof, which assignment is valid and effective." However, the declaratory judgment act under which Towle proceeded provides: "The supreme court and courts of general chancery and common-law juris-diction shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and *such declarations shall have the force and effect of a final judgment or decree."* (Em-phasis supplied.) Comp. St. 1929, sec. 20-21,140.

It is further noted that the trial court did not grant the prayer of Towle's petition that he "be absolved from any and all liability whatever with respect to said lease by rea-son of said purported assignment."

Towle appealed to this court from this decree and stated in the opening paragraph of his brief, "The various other points involved *having been satisfactorily settled by the trial court,* the only question presented on appeal for the deter-mination of this court is whether or not the terms of the lease permit an assignment of a part of the *lessee's interest* therein." (Emphasis supplied.)

This court on appeal by Towle ordered the decree of the district court modified "by adjudging the assignment of Towle valid with the effect of *releasing him from liability*

for subsequently accruing rents for the north 40 feet of the leasehold estate for the unexpired term of the lease." *Towle v. Morrell, supra.*

It will be noted further from the opinion that this court considered Towle as assignee of the lease from Sweet and as assignor to the Dutch Cleaners, and the Dutch Cleaners as Towle's assignee, and considered Towle to be "the owner of the entire lease" prior to the assignment to Dutch Cleaners. Upon the receipt of the mandate, the district court amended its decree and findings and construed the seventh paragraph of the lease "to permit and validate the assignment" by Towle to Dutch Cleaners; that said "assignment was valid," and "released said Towle from any and all liability under said lease for subsequently accruing rents * * * under the terms of said lease *for that portion of the leasehold premises* conveyed to Dutch Cleaners," and repeated the finding with reference to the placing of improvements on the property and release from liability when the "lease is assigned in accordance with paragraph 7 of said lease" above quoted. The finding that Towle was "assignee" and that the "assignment is valid and effective" which was contained in the first decree was omitted from the later decree, an action which patently was not in accord with the decree of this court.

Some time during this period there was also organized the Neon Radiant Sign Company, in which it appears that Towle took part and had an interest. It became one of the tenants in the south half of the property. Sweet died in California and his administrator on September 16, 1933, brought an action in the district court for Douglas county against the Neon company, the Dutch Cleaners, Towle and Mrs. Sweet, which eventually reached this court and was decided July 9, 1935. Morrell was not made a party to it. Neither was he or his attorney advised nor did they know of its pendency. Towle offered in evidence the decree in the district court and the decree on the mandate of this court to show his position with reference to this property and not as binding on Morrell. The pleadings were not offered. We have the right and the duty to examine into that proceeding to determine

what issues were presented and what determined. See *Witzenburg v. State,* 140 Neb. 171, 299 N. W. 533. An analysis of the pleadings reveals that the plaintiff in that action, as administrator, alleged the lease of Morrell to Gentleman (and attached a copy in full) ; alleged its assignment to Sweet (but did not set out the assignment) ; alleged the indebtedness of Sweet to Edwin S. Towle and John W. Towle, the contract between Sweet and Towle of January 13, 1926, which he alleges was an agreement to assign "in trust" (and attached a copy in full) ; alleged the assignment of Sweet to Towle of January 13, 1926 (but did not set out the assignment) ; alleged Towle's possession and management of the property. All of these allegations Towle admitted in his answer. Plaintiff further alleged reliance on Towle, a failure to account for the income, the transfer to Dutch Cleaners, a breach of the trust, that its continuance was no longer necessary, and prayed that the assignment be held to be one in trust, that Towle be required to account and that the Sweet estate and heirs be restored to ownership. To these latter allegations Towle alleged prudent and proper management, that the assignment to Dutch Cleaners was for the benefit of the leasehold, that any defaults were occasioned by a failure of the property to produce income, that he had performed his agreements and had advanced his own funds for the benefit of the trust.

Towle prayed for an accounting of the amounts due him from the trust estate and that he be reimbursed therefor.

The Dutch Cleaners answered that it had no knowledge of most of the facts alleged in the petition except the assignment to it; set out that it had paid consideration therefor, improved the property and was the absolute owner thereof, and that it had complied with the terms of the lease; and prayed that its rights be protected.

The Neon company answered that it had no knowledge of the facts set out in the petition except that it was a tenant month to month and prayed that its rights be safeguarded. Mrs. Sweet does not appear to have answered, and it is not shown that service was had upon her. It will thus be seen

that there was no issue presented to the district court by the pleadings on the question as to whether or not there was a trust agreement or whether or not Towle was a trustee. Those were matters admitted by the pleadings. Trial was had. Towle's brief filed in this court recites that he testified that "he had never claimed any other interest in the property than that of trustee." The district court entered a lengthy decree, holding that Towle held the property in trust, that he had defaulted by allowing the ground rents to become delinquent, that the object of the trust had failed, and that the necessity for the trust had ceased on December 31, 1932, and terminated the trust as of that date; held that Towle was not indebted to the trust estate and that the Sweets should be reinvested with full title to the property with rights superior to the Dutch Cleaners.

Towle and the Dutch Cleaners, however, appealed from that decree to this court. An appearance was made for the plaintiff (Frankfurt) but later that appearance was withdrawn. The two appellants in a joint brief assigned two errors. Towle contended that he was entitled to be reimbursed for advances made to protect the trust. Dutch Cleaners asked that its rights be protected. No other briefs were filed or appearance made. This court held that Towle should be given credit and protected for what he had contributed to the leasehold estate. This court did not determine the question as to the amount for which Towle was to have credit, but the judgment was "reversed and the cause remanded for further proceedings." In the case of *Towle v. Morrell, supra* (released the same day), this court held that the Dutch Cleaners' assignment was valid. It will be seen that each appellant prevailed on the point presented.

This lengthy review of the evidence and of the pleadings and decisions in the two cases discussed has appeared necessary in order that an understandable statement can be made of the history and issues in the instant case. The original petition was filed March 24, 1933, as a law action to recover *rents*. Action was delayed pending the determination of *Towle v. Morrell, supra.* An amended petition was filed Oc-

tober 3, 1935, alleging the Morrell to Gentleman lease; the assignments to Sweet, and to Towle; that Towle was liable; and setting out the amounts claimed for the entire leasehold. (By amendment at the time of the trial these allegations were extended for amounts due to January 1, 1937.) Towle on February 5, 1936, moved that Frankfurt be made a party defendant. This motion was overruled. Towle answered; admitted the Morrell-Gentleman lease, the assignment to Sweet, the improvements made by Sweet, the Sweet debt to Edwin S. Towle, and the debt to himself, the agreement between himself and Sweet, the assignment unacknowledged by him; and alleged that it was not a "definite transfer" of the interests of Sweet, that it was made for the benefit of the two parties and not Morrell; that Towle carried out the agreement; that Morrell knew his (Towle's) capacity with reference to the property, that Sweet died and that Frankfurt was his administrator. Towle then alleged the *Frankfurt v. Neon Radiant Sign* action; the decree; the appeal; that while modified with respect to certain matters, this court "generally affirmed the decree with respect to other matters." Towle then alleged the assignment to Dutch Cleaners and the history of that litigation. He then alleged that by reason of these things he had been absolved from liability for rents on the north 40 feet of the premises from May 21, 1927, and that that was *res judicata*. Towle further answered that he was trustee for Sweet and that this court had affirmed that relationship and terminated it; that all rents on either half had been paid up to the dates alleged and he was not liable. Plaintiff then moved to strike all that portion of the answer pertaining to the suit of *Frankfurt v. Neon Radiant Sign Co.* This motion was sustained by the trial court, and that action is not assigned as error on this appeal.

Plaintiff by reply admitted the Morrell-Gentleman lease, the assignment to Sweet, the assignment to Towle and the *Towle v. Morrell* action and decrees. He further alleged that by reason of *Towle v. Morrell, supra*, the liability of Towle for the rent under the lease and the assignment was

"admitted, established and adjudicated," and that defendant is estopped to deny liability. Plaintiff further alleged that Towle had assumed those obligations in the assignment and had held himself out as assignee owner; that plaintiff had accepted him as such; and that Towle was estopped to claim otherwise.

Towle then moved that the action be transferred to an equity court for a determination of the equitable principles involved and a pronouncement of the equitable remedies indicated. Frankfurt next filed a petition in intervention reciting this story including the decision in the district court and this court in his action, and praying for a determination of his rights to the leasehold. This petition was stricken from the files on motion of the plaintiff and no appeal taken therefrom.

Martha Sweet, as the widow and sole heir of Ernest Sweet, then filed a petition in intervention, alleging substantially all of these matters, as heretofore set out by Towle, and by Frankfurt in the action brought by him; alleged that Towle was a trustee; alleged the proceedings in *Frankfurt v. Neon Radiant Sign Co.*, that if plaintiff were successful Towle could look to her for reimbursement, that plaintiff seeks to deny her rights, that she has been in possession of the south half of the property; and prayed for a determination of the rights of the parties and that the leasehold as to the south half be quieted in her.

Plaintiff moved to strike this petition in intervention and his prayer was denied. Plaintiff then answered the petition in intervention and prayed for its dismissal and for equitable relief. Towle does not appear to have answered the petition in intervention.

Thereafter the cause was transferred to the equity docket upon defendant's motion made earlier in the case.

The case was tried in June, 1937, and the court on April 21, 1941, found that by reason of the proceedings in *Towle v. Morrell, supra,* Towle was released from liability for the rent on the north 40 feet of the leasehold. As to the remainder of the leasehold the court found in favor of the

plaintiff and against the defendant and the intervener on issues joined; found that there was due the plaintiffs from Towle for rent up to and including January 1, 1937, the sum of $11,834.53, for which he entered judgment for the plaintiffs against the defendant. Motion for a new trial was filed and overruled. Towle appeals.

No appearance has been made in this court by Martha Sweet and accordingly she, while designated an appellee, is making no objection to the decree.

The *Frankfurt* decision is not of a controlling consideration for four reasons: First, Morrell was not a party to that action. Second, it is quite obvious that the nature of the title held by Towle was never an issue either by pleadings or controverted fact before the district court. Third, this court was not presented with that question, did not determine it, and did not affirm the decree of the district court in that regard. On the contrary, that judgment was "reversed and the cause remanded for further proceedings." This was a general remand. *Bliss v. Live Stock Nat. Bank,* 124 Neb. 880, 248 N. W. 645. It should be noted here that *Towle v. Morrell, supra,* was "Remanded for modification of decree" in accord "with directions" contained in the last paragraph, whereas there were no such directions or limitations placed upon the reversal in the *Frankfurt* case. Fourth, there was no issue between the plaintiff and defendant on the question of the effect of the *Frankfurt* case. There was an issue on that question between the plaintiff and the intervener. That issue the trial court resolved in favor of the plaintiff and against the intervener, and from that determination the intervener has not appealed nor cross-appealed.

We now come to what we consider to be the basic question involved. May Towle under the facts here disclosed successfully contend in an equity court that he has no liability to Morrell for the performance of the terms of this lease as to that part of the premises not assigned to Dutch Cleaners? We think that he cannot.

We have set out the evidence in considerable detail in or-

der that it may be fully analyzed. We arrive at an independent conclusion in accord with that which has twice been reached by the district court for Douglas county, to wit, that Towle is an owner of this leasehold by assignment and liable according to the covenant contained in the Sweet to Towle assignment for the full performance of its terms as to that part of the leasehold not covered by the decision in *Towle v. Morrell, supra.*

The instruments of record are instruments of absolute assignment. The letters between Towle and Sweet indicate an assignment with title passing, but with Sweet having some possible interest therein, which by the contract appears to be largely the right to participate, in a diminishing degree, in any profits realized by Towle in the event of a sale. Towle dealt with and conveyed the leasehold to Dutch Cleaners as an owner and so recited in the instrument of conveyance. Not only that, but he took a consideration for that conveyance which an owner would have the right to take, but which under the terms of the agreement, were he a trustee, he would not have a right to take. The written record made by letters to Morrell through the years reveals the claim of ownership which in one instance it recited. It was not until the stringent economic conditions of 1933 arose that Towle sought to avoid his liability, first, by seeking a revision of the lease, and then by the claim that he was a trustee, but that came long after his status as owner with its rights and liabilities had been established in fact. We are not unmindful of his testimony in 1937 that he told Morrell in January, 1926, that he was taking this property as trustee, which testimony Morrell denied. However, Towle recited the substance of that conversation on four occasions, the second and third time on direct examination, in which he did not mention a trusteeship, and on cross-examination he disclaimed that the conversation took that "trend." This testimony given by Towle in 1937 is discredited by Towle's own acts prior thereto. He says that he told Morrell in 1926 that he (Towle) would pay Morrell only those rents received after deducting therefrom the taxes; in short, that he was

to give Morrell only the nets of the rent, and yet for seven years he paid Morrell the ground rents stipulated in the lease (excepting those paid by Dutch Cleaners), apparently at all times in part out of his own funds and without protest that he was not obligated to make those payments. Towle's testimony as to this conversation is further discredited by the fact that the contract between Sweet and Towle provided that Towle should advance whatever sums were necessary to pay the ground rentals (and other items) if the gross rents were not sufficient.

To this evidence must be added the fact that he asked the district court in *Towle v. Morrell, supra,* to release him from all liability, that that court refused to do so, and that this court granted him a release from the one-half of the rent in the Dutch Cleaners' assignment by decision based on the proposition that Towle was the owner of the leasehold and had the right to assign it *"pro tanto."* Towle in this action claims the protection and the benefit of that judgment. He cannot now be heard to deny the conclusions of fact upon which that judgment rests.

"Any right, fact, or matter in issue, and directly adjudicated upon, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered upon the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether the claim or demand, purpose, or subject-matter of the two suits is the same or not." 34 C. J. 743, cited with approval in *Wheeler v. Brady,* 126 Neb. 297, 253 N. W. 338; *State v. Newman Grove State Bank,* 128 Neb. 422, 259 N. W. 170; *Blochowitz v. Blochowitz,* 130 Neb. 789, 266 N. W. 644.

"If a judgment necessarily presupposes certain premises, they are as conclusive as the judgment itself. Reasons for the rule are that a judgment is an adjudication on all the matters which are essential to support it, and that every proposition assumed or decided by the court leading up to the final conclusion and upon which such conclusion is based is as effectually passed upon as the ultimate question which is finally solved." 30 Am. Jur. 928, sec. 183.

This court in *Hanson v. Hanson*, 64 Neb. 506, 90 N. W. 208, said: "It is allowable to reason back from a judgment to the basis upon which it stands, on the obvious principle that where a conclusion is indisputable, and could have been drawn only from certain premises, the premises are equally indisputable with the conclusion." This court has also held: "Where a judgment is necessarily based on certain premises, such premises are equally conclusive, in a subsequent action between the same parties, as the judgment itself." *Shelby v. Creighton*, 65 Neb. 485, 91 N. W. 369. "A judgment is an estoppel upon a party not only in so far as it decides a question adversely to his claim or contention * * * but where it recognizes or sustains his theory or claim it estops him from afterward taking a different position in litigation with the same opponent." 34 C. J. 907. "Where the judgment determines the title or right under which the party claims, it is decisive as to any other property or right claimed under the same title." 34 C. J. 906. See *Hanson v. Hanson, supra.*

Only one judgment is permissible in this case, and that is that Towle is an owner of the leasehold under an assignment which is valid and effective and that he holds the assignment of the leasehold (save and except that covered by the judgment in *Towle v. Morrell, supra*) subject to the obligation to perform its terms and conditions. The manner in which he may be excused from that liability was determined in *Towle v. Morrell, supra*, to wit, by assignment "in accordance with the conditions in paragraph 7 of said lease." That assignment Towle, obviously, has not made.

The judgment of the district court is

AFFIRMED.

YEAGER, J., did not participate in this decision.