ALVINA WISCHMANN ET AL., APPELLEES, V. RALPH RAIKES,
APPELLANT.

97 N. W. 2d 551

Filed June 26, 1959.   No. 34368.

*Kennedy, Holland, DeLacy & Svoboda, Gross, Welch, Vinardi & Kauffman, Malcolm D. Young, William P. Mueller,* and *Bryant, Christensen & Sullivan,* for appellant.

*John J. Edstrom, Nelson & Harding,* and *Duane W. Acklie,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

On rehearing we have come to the conclusion we were in error in two areas in our original opinion herein released on October 31, 1958, and reported in 167 Neb. 251, 92 N. W. 2d 708. We therefore withdraw that opinion and substitute therefor the following.

On June 10, 1954, Willy Wischmann and Alvina Wischmann, husband and wife, brought this action in the district court for Saunders County against Ralph Raikes. Willy Wischmann died on April 17, 1956, and the action, as to him, was revived in the name of Alvina Wischmann as the administratrix of his estate.

The purpose of the action is to recover monetary losses which the Wischmanns claim they suffered by reason of the loss of the use of their lands since 1945 and for injury to their crops, livestock, and fences since that time. The Wischmanns contend their losses resulted from the defendant digging channels and constructing dikes and levees on his lands whereby he unlawfully obstructed the flow on his lands of the floodwaters flowing in the flood planes of Mosquito, Wahoo, and Silver Creeks, as they cross his lands, and the natural flow of Silver Creek, and thereby causing such waters to flow over and across plaintiffs' lands where it had not been wont to flow prior to such channels being dug and dikes and levees being constructed. The trial court limited the plaintiffs' right of recovery to damages, if any, they had suffered after June 10, 1950, that being 4 years prior to the institution of this action. The jury returned a verdict for the plaintiffs in the sum of $10,000 "for loss of use of the land."

Defendant filed both a motion for judgment notwithstanding the verdict and for new trial. He perfected this appeal from the overruling thereof. The

trial court entered a judgment on the verdict for the plaintiffs.

Appellees were at all times herein material the owners of the northeast quarter and the north half of the southeast quarter, north and east of a railroad right-of-way, of Section 21, Township 13, Range 9, in Saunders County, Nebraska. Appellant was at all times herein material the owner of the northwest quarter and the northeast quarter of the southwest quarter of Section 18, all of the east half of Section 18, south and west of the railroad right-of-way, and all of the west half of Section 17, south and west of the railroad right-of-way, in Township 13, Range 9, Saunders County, Nebraska. The railroad right-of-way referred to above is the Ashland-Prague branch of the Chicago, Burlington & Quincy Railroad Company.

Appellant contends there was no sufficient and proper proof adduced to support or substantiate any of appellees' claims that any activities on his part were in fact a proximate cause of any of their claimed injuries and damage for the years in question; that is, that appellees have failed to prove any causal connection between their claimed damage and the diversion of floodwaters. The burden of proof to sustain their cause of action devolved on the appellees. However, "In testing the sufficiency of evidence to support a verdict it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom." Smith v. Platte Valley Public Power & Irr. Dist., 151 Neb. 49, 36 N. W. 2d 478. See, also, Stolting v. Everett, 155 Neb. 292, 51 N. W. 2d 603.

On May 7, 1952, Ernest G. Bahm and Mabel E. Bahm, husband and wife, Theodore Sohl, Willy Wischmann, and Alvina Wischmann filed an action in the district court for Saunders County against Ralph Raikes. Therein the plaintiffs alleged the defendant had dug channels

and erected dikes and levees on his lands that unlawfully diverted floodwaters of Mosquito, Wahoo, and Silver Creeks from the flood plane thereof over and across plaintiffs' lands and also diverted the natural flow of Silver Creek from Wahoo Creek into Ab's Lake from where it flowed across plaintiffs' lands. Plaintiffs therein alleged: "That by reason of the acts of the defendant, as herein alleged, the plaintiffs have suffered irreparable injury and damage to the lands described in paragraph I herein, have lost crops growing on said lands and have been prevented from cultivating and farming parts of said lands; that the acts of the defendant will continue to cause irreparable injury and damage to said lands and crops." Paragraph "I" therein referred to describes the tracts of land owned by each of the several plaintiffs. It includes the Wischmanns' 240-acre tract. It will be observed that this is the same cause of action as pleaded herein.

The plaintiffs then prayed: "* * * that the defendant, his agents and servants, be enjoined and restrained from diverting the natural flow of Silver creek onto and upon the lands of the plaintiffs and from diverting the flow of flood waters of Wahoo, Mosquito and Silver creeks onto and upon the lands of these plaintiffs and from maintaining the dikes and levees erected and constructed as herein alleged, and that said defendant be ordered to remove said dikes and levees constructed and erected by him, his agents and servants, to return the flow of waters of Silver Creek to the course that existed at the time defendant purchased said real estate and for many years prior thereto and as herein alleged, and, with respect to the drainage of the waters of Wahoo, Mosquito and Silver creeks, to restore his said lands to the same level and condition as at the time said lands were purchased by said defendant and before said dikes and levees were erected and constructed and as they had existed for many years prior thereto, and to open the natural course of Silver creek

as the same existed on the lands of the defendant at the time said lands were purchased by said defendant and for many years prior thereto. Plaintiffs further pray * * * for such other and further relief and orders as may in equity be required."

An answer was filed thereto by Raikes and issues joined. Trial was had in December 1953, and January 1954. On February 15, 1954, the trial court rendered its decree finding generally for the plaintiffs and specifically: "That the defendant has diverted the flow of Silver creek from its natural course so that it now flows over and across the lands of the plaintiffs and where it would not flow, but for the work of the defendant; that the defendant has obstructed the flood channel across his land and diverted the flow of flood waters from Mosquito creek, Silver creek and Wahoo creek from the natural flood channel and onto the lands of the plaintiffs. That plaintiffs have suffered irreparable injury. That plaintiffs will continue to suffer irreparable injury if the defendant is permitted to maintain the dikes constructed by him and to continue to divert the flow of Silver creek from its natural course and to continue to divert the flow of flood waters from said creeks onto the lands of the plaintiffs." To prevent such injury from continuing the trial court ordered Raikes to do certain things to restore the situation to its former status and then ordered: "* * * that defendant be, and he hereby is, enjoined from maintaining the dikes along the present courses of Wahoo and Mosquito creeks which are above ordered to be removed and from diverting the natural flow of Silver creek and from diverting the flow of flood waters of Wahoo creek, Mosquito creek and Silver creek from the flood channels west and south of Wahoo creek as it flows through said lands of the defendant."

Raikes appealed therefrom to this court. We affirmed the judgment of the trial court. Bahm v. Raikes, 160 Neb. 503, 70 N. W. 2d 507. Therein we held: "The

appellant (Raikes) obstructed and changed the action and course of the floodwater of Mosquito Creek and of the flood plane thereof. * * * he obstructed the flood plane of Wahoo Creek and interfered with the action and course of water therein, * * *" and diverted "water that would have gone down Silver Creek before appellant had made transformations in the area and to conduct and force it toward the southeast north of the land of appellant through Ab's Lake and on to the east. This was a clear diversion of the water of Silver Creek from the course of its natural flow. * * * He farmed and got a crop from his land each year before 1944. His land has been substantially made unfit for cultivation and production."

As already indicated this action against appellant is upon the same factual situation as was involved in Bahm v. Raikes, *supra*. Among the allegations of appellees' amended and supplemental petition, on which the case was tried, are the petition, judgment, and affirmance of this court of Bahm v. Raikes, *supra,* appellees contending: "* * * the findings of the District Court of Saunders County, Nebraska, * * * are final and conclusive and binding upon the defendant in this action."

" 'It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action.' " Blum v. Truelsen, 139 Neb. 282, 297 N. W. 136.

Under the principle stated in Johnson v. Marsh, 146 Neb. 257, 19 N. W. 2d 366, as hereinafter set forth, the appellees herein are entitled, under the foregoing principle, to the legal effect of our holding in Bahm v. Raikes, *supra,* that: "His (Willy Wischmann's) land (240 acres) has been substantially made unfit for cultivation and production." The principle stated in Johnson

v. Marsh, *supra,* is as follows: "Where cases are interwoven and interdependent and the controversy involved has already been considered and determined by the court in former proceedings involving one of the parties now before it, the court has the right to examine its own records and take judicial notice of its own proceedings and judgments in the former action." As stated in Cover v. Platte Valley Public Power & Irr. Dist., 162 Neb. 146, 75 N. W. 2d 661: "In the light of such rule plaintiff argued that the trial court erred prejudicially in refusing to examine its own records and take judicial notice of its own proceedings, and the judgments rendered by that court and this court on appeal in Faught v. Platte Valley Public Power & Irr. Dist., *supra,* an interwoven and interdependent case in which defendant was a party. We sustain that contention. In such case not only the same trial court, but also this court on appeal, held that the very same 42-inch drain here involved was inadequate and that defendant was negligent in constructing and maintaining same. That question has been finally decided and could not properly be again submitted to a jury for it to determine whether or not the trial court and this court were correct in making such a decision. Therefore, the trial court erred prejudicially in failing and refusing to instruct the jury as a matter of law that defendant was negligent as alleged by plaintiff. To hold otherwise would be a travesty upon justice and permit a trifling with judgments duly rendered according to law. On the other hand, as a matter of course, the trial court should have told the jury that the burden was upon plaintiff to prove by a preponderance of the evidence that plaintiff's damages were proximately caused by such negligence of defendant, and the amount of plaintiff's damages." The foregoing has application here. See, also, Anderson v. Anderson, 155 Neb. 1, 50 N. W. 2d 224.

There was evidence produced in this case, as well

as in the case of Bahm v. Raikes, *supra,* to the effect that the silting on, eroding of, depositing of debris on, and the wetness of the Wischmann land, which made it unfit for cultivation and production since 1944, all resulted from what Raikes had unlawfully done. There was evidence herein adduced to the effect that this condition of appellees' land continued and did not start to improve until after Raikes removed the things that caused it. This he did sometime after our mandate, dated October 17, 1955, went down based on our opinion of June 3, 1955, as is evidenced by his answer filed herein on October 18, 1956.

Appellee Alvina Wischmann and her son Donald both testified it was because of this unfit condition of the land that during the years from 1950 through 1956 either all or part of the cultivated lands in the low areas of the Wischmann 240 acres could not be planted to crops. They also testified to the effect that these conditions destroyed the hay meadow and pasture so they were not fit for use. This evidence is sufficient to justify a jury finding a causal connection between what appellant unlawfully did and appellees' damages, that is, that it was the proximate cause thereof. We were in error in holding that it was not.

Appellant contends that because a trial was had in the district court for Saunders County in December 1953 and January 1954, upon the same cause of action, wherein an injunction therein prayed for by appellees was granted against the appellant, that the appellees, since they were plaintiffs therein, are now barred from maintaining this proceeding asking for monetary recovery based on damage suffered during the same period of time as was involved in the foregoing injunction proceedings. He contends the law is well settled that one is not allowed to split his cause of action; that is, if he might have had the relief he now seeks in an action he had previously brought and prosecuted to final judgment he may not again vex his former adversary with

another suit based upon the same wrong, contending he is entitled to have the issues in this case limited to all damages, if any, which plaintiff sustained after February 15, 1954.

As a basis for our holding in Bahm v. Raikes, *supra*, we cited the following authority: "In Ballmer v. Smith, 158 Neb. 495, 63 N. W. 2d 862, the court said: 'The owners or proprietors of lands bordering upon either the normal or flood channels of a natural watercourse are entitled to have its water, whether within its banks or in its flood channel, run as it is wont to run according to natural drainage, and no one has the lawful right by diversions or obstructions to interfere with its accustomed flow to the damage of another.'

"It is beyond the area of argument in this state that a riparian owner may not dam, obstruct, or dike against floodwaters of a running stream to the injury of a lower landowner. Ballmer v. Smith, *supra*; Frese v. Michalec, 148 Neb. 567, 28 N. W. 2d 197." It will be observed that what was sought to be enjoined must result in injury or damage to the party seeking relief therefrom, and both parties agree that such is the law. See, also, Brchan v. The Crete Mills, 155 Neb. 505, 52 N. W. 2d 333. Plaintiffs therein, which included the Wischmanns (appellees herein), alleged and proved, as a necessary element of their cause of action on which they based their right to enjoin, that what Ralph Raikes (appellant herein) had done and was doing was damaging and injuring their lands and crops.

On June 10, 1954, the Wischmanns brought this action against Raikes in the district court for Saunders County upon the same factual situation as was involved in Bahm v. Raikes, *supra*. The only difference between that case and the one before us, insofar as the Wischmanns are concerned, is that in the former action injunctive relief was sought whereas herein monetary relief is asked, both based on the fact that what Raikes did injured or damaged the Wischmanns' lands and

personal property. It will thus be observed that injury or damage to their property because of what Raikes did is the basis upon which the Wischmanns claim certain rights in each of the two cases. There is no question but what the Wischmanns could have obtained both types of relief in the original action had they seen fit to do so. See, Brchan v. The Crete Mills, *supra;* Armbruster v. Stanton-Pilger Drainage Dist., 165 Neb. 459, 86 N. W. 2d 56. The question here is, can they split such cause of action and in separate actions ask for two different types of relief when each type of relief is fundamentally based on the same facts or cause of action?

We said in Anderson v. Anderson, *supra,* that: "An adjudication by this court extends to all matters decided expressly or by necessary implication and not alone to the questions actually and formally presented but to all existing in the record and necessarily involved in the decision. Kuhns v. Live Stock Nat. Bank, 138 Neb. 797, 295 N. W. 818. A litigant, if he might have had all of the relief he seeks in an action he has brought and prosecuted to final judgment, may not again vex his former adversary with another suit based on the same wrong. If a matter becomes the subject of litigation and is adjudicated, the law requires the parties to bring forward their whole case and will not generally permit the same parties to open the same subject of litigation in respect to a matter which might have been brought forward as a part of the subject contested but which was omitted as a part of the case. The plea of res judicata applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation and which the parties exercising reasonable diligence might have brought forward at the time. A litigant may not be permitted to split a cause of action or present an issue for determination

and avoid the effect of an estoppel by withholding proof of it." See, also, Wightman v. City of Wayne, 148 Neb. 700, 28 N. W. 2d 575; National City Bank of Cleveland v. Jones, 149 Neb. 844, 32 N. W. 2d 755; Triska v. Miller, 86 Neb. 503, 125 N. W. 1070; Wightman v. City of Wayne, 144 Neb. 871, 15 N. W. 2d 78; Williams v. Beckmark, 150 Neb. 100, 33 N. W. 2d 352; Pettijohn v. County of Furnas, 150 Neb. 736, 35 N. W. 2d 828. See also the numerous cases of this court reported under Key No. 713(2), Judgment, Nebraska Digest, under "Matters which might have been litigated."

We have also held: " 'Any right, fact or matter in issue, and directly adjudicated upon, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered upon the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether the claim or demand, purpose, or subject-matter of the two suits is the same or not.' " Wheeler v. Brady, 126 Neb. 297, 253 N. W. 338. See, also, Morrell v. Towle, 141 Neb. 370, 3 N. W. 2d 655.

The basis for the breadth of this rule is the fact that in this state there has been a complete merger of legal and equitable remedies. Since 1867, what is now section 25-101, R. R. S. 1943, has provided: "The distinctions between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing, are abolished; and in their place there shall be hereafter but one form of action, which shall be called a 'civil action.' "

Under our system of code pleading, a plaintiff is required to plead only the facts and it is the duty of the court to award him any relief, either legal or equitable, to which he is entitled thereunder. The defendant likewise may set up any defense he may have, legal or equitable, and the court is required to grant him any relief to which he may be entitled. As held in Hopkins

v. Washington County, 56 Neb. 596, 77 N. W. 53: "In this state there is but one form of action, to be called a 'civil action,' * * * in which either relief may be sought and obtained; and if the facts pleaded and proved demand, the rules of either law or equity, or both, may be enforced." See also, City of Beatrice v. Gage County, 130 Neb. 850, 266 N. W. 777.

In view of this situation the following "Comment" from Restatement, Judgments, § 66, p. 282, has application: "Where the plaintiff brings a suit in equity to enjoin the continuance of a tort, and a decree is given in his favor granting the injunction, it depends upon the extent to which there is a merger of legal and equitable remedies in the particular State whether the plaintiff is precluded from thereafter maintaining an action at law to recover damages resulting from the tort prior to the bringing of the suit or the rendition of the decree. * * * If the court of equity could properly award damages but the plaintiff did not seek to recover damages in the suit, whether he can thereafter maintain an action at law to recover damages depends upon the extent to which legal and equitable remedies are merged in the State in which the suit was brought. In some States, although a court of equity may award damages, there is not such a merger of legal and equitable remedies that the plaintiff is compelled to seek damages in the equitable proceeding or be precluded from thereafter seeking damages in an action at law; in such States if the plaintiff brings a suit in equity to enjoin the continuance of a tort and does not seek damages which he has suffered from the tort, he is not precluded from thereafter maintaining an action at law to recover damages. *In States, however, in which there is a more complete merger of legal and equitable remedies, the plaintiff is compelled to seek in the equity proceeding whatever damages he may be entitled to, and if he makes no demand for damages he is precluded from thereafter maintaining an action at law to recover*

*damages."* (Emphasis ours.) See, also, 2 Freeman on Judgments (5th Ed.), § 593, p. 1250. In 26 A. L. R. 2d. 446, there will be found a recent annotation on the subject "Decree granting or refusing injunction as res judicata in action for damages in relation to matter concerning which injunction was asked in first suit." On page 452 thereof, under section 5, will be found the case of Ledingham v. Farmers Irr. Dist., 135 Neb. 276, 281 N. W. 20, while on page 460, under section 9, appears the case of Shepard v. City of Friend, 141 Neb. 866, 5 N. W. 2d 108. The annotation would indicate these cases come to opposite conclusions.

On March 11, 1937, Cora M. Hall, H. F. M. Hall, Lulu Kreiling, Cecile E. Shepard, Frank Olmsted, and Bert Cain brought an action in the district court for Saline County against the City of Friend by which they sought to enjoin the city from disposing of the waste water from its sewage disposal plant into a natural drain or watercourse which flowed across plaintiffs' lands, claiming that by doing so the city was irreparably injuring and damaging their lands and property. The plaintiffs also prayed for such other and different relief as to the court may seem just but did not ask for monetary damages as such. That is the same situation as was involved in the original action brought in Saunders County involving this litigation. The trial court in the Saline County case found that noxious odors emanated from the low places on plaintiffs' land caused by the water being allowed to flow thereon from the City of Friend's sewage disposal plant but found there were no other damages caused to plaintiffs' lands by the flow of water therefrom. The city was given 90 days in which to correct such odor by proper chemical treatment and did so. On appeal to this court we affirmed the trial court's judgment. Hall v. City of Friend, 134 Neb. 652, 279 N. W. 346. One of the bases for denying the injunction is stated therein as follows: "Under the facts in this case, the erection of a sewage disposal

plant having been properly done, without negligence, it will be held to be a lawful exercise of power that equity will not restrain." We therein set out that: "In Stuhr v. City of Grand Island, 120 Neb. 491, 233 N. W. 886, it was held: 'While a court of equity may enjoin such manner of construction or operation of a sewer system as causes or results in a nuisance, yet it will not perpetually enjoin the construction or operation of the system if so changed as not to cause or create a nuisance.' "

On March 29, 1939, Cecile E. Shepard, Cora M. Hall, H. F. M. Hall, and Lulu Kreiling filed their second amended petition in an action in the district court for Saline County against the City of Friend in which they sought to recover monetary losses from the city for damage to their lands and property based on the same factual situation as in the former suit. The trial court found the defense of res judicata should be sustained and dismissed the action. On appeal we affirmed the trial court's holding. Shepard v. City of Friend, *supra*. Therein we said: "On the facts pleaded in the former action the plaintiffs had available two remedies, namely, injunction and damages, provided, of course, that they sustained the allegations of fact. They sought only injunction. They failed to sustain their allegations of fact, hence, there having been no mistake of remedy, under the doctrine of res adjudicata they are estopped to assert the same facts in support of an additional and concurrent remedy which is dependent solely upon those facts.

"The fact that the plaintiffs did not seek to recover damages in the former action is not a matter to be considered of consequence here. The rule is that a party should not be vexed more than once for the same cause of action, and the doctrine of res adjudicata includes not only the things which were determined in the former suit, but also any other matter properly involved which might have been raised and determined therein."

As stated in Gilbert v. Boak Fish Co., 86 Minn. 365, 90 N. W. 767, 58 L. R. A. 735, which we cited in Brchan v. The Crete Mills, *supra:* " 'An action for abatement and injunction necessarily includes damages, substantial or nominal, and, if the pleader is entitled to the former, it is for him to frame his complaint accordingly. Failing in this, he waives them, for to permit him to afterwards maintain a separate suit therefor is to permit the splitting up of a cause of action.' " The court goes on to say: "We think the reasoning of that case is decisive of this action, and that the facts set forth in the complaint in the prior action constitute one cause of action, though it embraced two elements: First, the discontinuance of the nuisance; and, second, the damages incident thereto."

In Ledingham v. Farmers Irr. Dist., *supra,* we said: "This is an action by William Ledingham, plaintiff, to recover from the Farmers Irrigation District, defendant, $3,500 in damages to growing crops by its failure to deliver to him from the North Platte river, through its canal, the quantity of irrigating water to which he was entitled during July, August and September, 1934, under his appropriation and vested contract right. * * * It pleaded also that a former suit barred the present action." We then said: "Defendant urges the further defense that the cause of action in which equitable relief was granted to plaintiff in the former suit necessarily included the damages allowed herein and precluded recovery therefor in the action at bar. It is argued that the entire controversy involving the equitable relief granted and the subsequent recovery of damages in the present action at law was determinable in the former suit in equity and that the splitting of what defendant calls a single cause of action is condemned as wholly untenable." We then held: "As already pointed out, the remedy sought was a determination of the quantity of water to which plaintiff is entitled under his appropriation and a permanent injunction to pre-

vent defendant from invading his vested contract rights to specific quantities of water for purposes of irrigation. *Damages were not pleaded, presented, proved or determined in the former case.* There is some diversity of judicial opinion on this subject in vast fields of litigation, *but the better view seems to be that, in a situation like the present,* the granting of an injunction is not necessarily a bar to an action at law for damages caused by the wrong enjoined." (Emphasis ours.)

This cause first came to this court as reported in Vonburg v. Farmers Irr. Dist., 128 Neb. 748, 260 N. W. 383. Therein we said: "This is an action for injunction and other equitable relief. * * * The following is a brief summary of the pertinent facts alleged in the petition: Each of the plaintiffs is the owner of land that has been regularly irrigated for more than 40 years from water furnished through a canal which is now owned by the defendant corporation. Plaintiffs claim the right to a continuation of this service under and pursuant to a prior appropriation of the water and to contracts entered into between them and the Farmers Canal Company, a former owner of the canal, and without being compelled to prorate the water in the canal with other patrons of the defendant corporation. * * * We are of the opinion that the present controversy hinges on the question of whether plaintiffs, by their contracts and under the law as then existing, acquired a vested right to the quantity of water for which their contracts call. * * * It follows that, if their rights are superior, then they are entitled to the water in preference to the subsequently acquired patrons of the defendant corporation." Then, in Vonburg v. Farmers Irr. Dist., 132 Neb. 12, 270 N. W. 835, which involves the same action, we said: "We therefore conclude that the original stockholders had a property right vested in them to the extent of the water claimed in their several contracts and such property right might be sold and disposed of as any other property under the law as it then existed." It

thus becomes evident that there is a distinction between the Ledingham case and the City of Friend case by reason of the fact that injury or damage was no part of the cause of action in the Ledingham case and did not properly belong to the subject of that litigation.

In view of our frequent holding, as evidenced by the many cases cited herein and under Key No. 713(2), Judgment, in the Nebraska Digest, to the effect that a party should not be vexed more than once for the same cause of action, and the doctrine of res judicata includes not only the things which were determined in the former suit, but also any other matter properly involved which might have been raised and determined, we do not think appellees should be allowed to split their cause of action by filing two suits for different types of relief when such relief all flows from the same cause of action and could have been sought therein.

Appellees contend that because there were five different parties plaintiff in the prior equity matter it would have been impossible to adjudicate appellees' claim for damages because each plaintiff's claim would have been a separate cause of action not affecting the others. Based thereon appellees contend they should not be precluded here.

In Brchan v. The Crete Mills, *supra,* by quoting from Schreiner v. Witte, 143 Neb. 109, 8 N. W. 2d 831, we restated the oft-announced principle that: "It is a well-settled principle of equity jurisprudence that, where a court of equity has obtained jurisdiction of a cause for any purpose, it will retain it for all, and will proceed to a final determination of the case, adjudicate all matters in issue, and thus avoid unnecessary litigation." We then went on to say that: "In the case of Mitchell Realty Co. v. City of West Allis, 184 Wis. 352, 199 N. W. 390, 35 A. L. R. 396, a suit brought against eight defendants to abate a nuisance caused by the pollution of a stream, and recover damages, upon motion of the defendants, allegations as to damages were stricken.

The court said: 'Under the doctrine well established by this court, if a court of equity takes jurisdiction of a matter it will retain jurisdiction for the purpose of doing complete justice between the parties, and will, in a proper case, not only extend its equitable remedy but will also permit the recovery of damages.' The court overruled the order of the trial court in striking the plaintiff's allegations as to damages, holding: 'Had the action proceeded, the plaintiffs could have obtained their equitable remedy for the abatement of the nuisance, and, upon the determination by the court of the proportionate share of the damage caused by each of the defendants, were entitled to judgment for such amounts, thus disposing of the entire litigation in one action. To accomplish such a result is one of the principal functions of a court of equity.' See, also, McMechen v. Hitchman-Glendale Consolidated Coal Co., 88 W. Va. 633, 107 S. E. 480; Gilbert v. Boak Fish Co., 86 Minn. 365, 90 N. W. 767, 58 L. R. A. 735; Stoner v. Mau, 11 Wyo. 366, 72 P. 193; Carthew v. City of Platteville, 157 Wis. 322, 147 N. W. 375; Karns v. Allen, 135 Wis. 48, 115 N. W. 357, 15 Ann. Cas. 543.

"With reference also to the recovery of damages, damages to personal property located on the real estate may also be recovered in this equity action. See, Graham v. Pantel Realty Co., *supra*; Weingand v. City of North Platte, *supra;* Stoner v. Mau, *supra.*

"It is apparent that damages recoverable in an action of this kind are not limited to damages to the real estate alone, but include damages to personal property located thereon." The foregoing has application to the rights which the several plaintiffs had to recover their damages, if any, in the original injunction action.

"The relief ordinarily granted in equity is such as the nature of the case, the law, and the facts demand, not at the beginning of the litigation, but at the time the decree is entered." Conrad v. Kaup, 137 Neb. 900, 291 N. W. 687. See, also, Stocker v. Wells, 150 Neb. 51,

33 N. W. 2d 445; Propst v. Board of Educational Lands & Funds, 156 Neb. 226, 55 N. W. 2d 653; Comminge & Geisler v. Stevenson, 76 Tex. 642, 13 S. W. 556. The decree in the original injunction action was rendered on February 15, 1954.

We find appellees have precluded themselves from claiming any monetary loss for damages they may have suffered prior to February 15, 1954, by failing to ask for such in their original action.

Appellant also pleaded the statute of limitations. By the allegations of their amended and supplemental petition the appellees sought to recover monetary benefits from 1945 forward for damages, if any, which they had suffered. The trial court limited such right to June 10, 1950, or a 4-year period prior to the bringing of this action. "A temporary injury is defined in 32 C. J. 521, as 'An injury that may be abated or discontinued at any time, either by the act of the wrongdoer, or by the injured party.'" Applegate v. Platte Valley Public Power & Irr. Dist., 136 Neb. 280, 285 N. W. 585. That was the appellant's position with reference to what he had done. As stated in Omaha & R. V. R. R. Co. v. Standen, 22 Neb. 343, 35 N. W. 183: "* * * where damages result from a continuing nuisance * * * a recovery may be had for each injury as it occurs." However, recovery could only be had for a period of 4 years from the time each of such causes of action accrued. § 25-207, R. R. S. 1943. Any further discussion of this subject would, however, serve no useful purpose as we have already come to the conclusion that appellees have precluded themselves of the right to recover for any damages to their lands or personal property prior to February 15, 1954. To recover monetary losses for 1954, and any years subsequent thereto, because of the unfit condition of their lands for cultivation and other uses, the appellees must adduce evidence from which a jury could properly find that the conditions existing prior thereto continued after February 15, 1954, and were

caused by what appellant had unlawfully done; that damages, if any, which they suffered were caused thereby; and, if so, the value thereof.

In view of the foregoing it becomes necessary to reverse the judgment of the trial court and set aside the verdict for the jury was erroneously permitted to consider damages, if any, accruing to the appellees in the years of 1950, 1951, 1952, and 1953. However, there are some other questions raised which will reappear on retrial so we discuss them briefly.

"It is always the duty of the court to instruct the jury as to the proper basis upon which damages are to be estimated. The jury should be fully and fairly informed as to the various items or elements of damage which they should take into consideration in arriving at their verdict, otherwise the jury may be confused and misled." Linch v. Hartford Fire Ins. Co., 138 Neb. 110, 292 N. W. 27, 129 A. L. R. 1063. See, also, Benedict v. Epply Hotel Co., 159 Neb. 23, 65 N. W. 2d 224.

As to the loss of the use of ground that had formerly been cultivated and planted to crops, which is the principal claim here, the usual rule is that: " 'If plaintiff was prevented from planting any part of his lands by reason of flooding due to negligence of defendant, his measure of damages on this account would be the reasonable rental value of such land for that season, * * *.' " Hopper v. Elkhorn Valley Drainage Dist., 108 Neb. 550, 188 N. W. 239. See, also, Franklin Drilling Co. v. Jackson, 202 Okl. 687, 217 P. 2d 816. However, as stated in Gledhill v. State, 123 Neb. 726, 243 N. W. 909: "In the instant case, the plaintiff's claim is represented by the loss of the use of the land for the crop season for 1929. * * * 'The question of whether damages based on the result of an unmatured crop are speculative must be determined by whether there is sufficient data to determine with reasonable certainty the probable value it would have had if matured.' 17

C. J. 785. The determination of the value of the loss of the use of this land can be made almost certain in this case if based upon the evidence of the value of the crop which could have been raised upon this land but for the flood. * * * The best available test of the value of the use of the land to the lessee is the value of the crops which could and would have been grown upon this land, particularly where it is removed from speculation and remoteness and made definite and certain by proof as to what portions of the land and similar adjoining land produced." The court went on to say: *"When there is evidence of the actual value of other matured crops of a like kind grown during the same period, in portions of the same or adjoining land under similar conditions,* there is sufficient data to determine with reasonable certainty the probable value of an unmatured crop if it had matured. * * * In this case, there was nothing left to conjecture or speculation as to the probability of the crop or the extent of it dependent upon the rainfall or unfavorable conditions. Every element surrounding the production of a crop was then known and was applicable alike to the land that was flooded and that which was not. The trial court made this finding: 'The court further finds that said lands so flooded, set apart for the raising of corn in 1929, but for said flooding would have produced an average of 50 bushels per acre, of the value of 90¢ a bushel, and that the cost of raising, harvesting and marketing an acre thereof was $11.75.' In this particular case, there is no more accurate way of determining either the rental value or the value of the use than the determination made in this case from the evidence. The evidence is direct and certain that the owner of this land lost the amount calculated upon this basis from the flooding of the land." (Emphasis ours.) Which principle a court should apply when instructing the jury will depend on the evidence adduced at the trial.

As to the loss of a perennial crop, such as a hay

meadow or pasture, the rule is as stated in Hopper v. Elkhorn Valley Drainage Dist., *supra:* "'In case of the destruction of a perennial crop * * *, the measure of damages is the difference between the value of the land immediately before the injury with the crop growing thereon, and the value of the land immediately after the destruction of the crop.'" See, also, Faught v. Platte Valley Public Power & Irr. Dist., 147 Neb. 1032, 25 N. W. 2d 889; McKee v. Chicago, B. & Q. R. R. Co., 93 Neb. 294, 140 N. W. 145; Faught v. Dawson County Irr. Co., 146 Neb. 274, 19 N. W. 2d 358.

As to any crop that may have been injured, but not entirely destroyed, the rule is: "The measure of damages where a crop is injured but not rendered entirely worthless as a result of the acts or omissions of another is the difference between the value at maturity of the probable crop if there had been no injury and the value of the actual crop at the time injured less the expense of fitting for market that portion of the probable crop which was prevented from maturing." Gable v. Pathfinder Irr. Dist., 159 Neb. 778, 68 N. W. 2d 500.

Appellant contends the admission into evidence of the opinion of this court in Bahm v. Raikes, *supra,* and the reading of same to a jury in its entirety, constitutes error. Also that the court committed error in the admission of the petition, answer, and decree of the trial court and motion for new trial filed by defendant in the same action. With this we agree. In fact, the trial court went so far as to include in his instruction No. 1 to the jury the decree of the trial court in its entirety.

Under the plea of res judicata the pleadings and judgment relied on in support thereof may properly be introduced in evidence but not the opinion of the appellate court relating thereto. See Reams v. Clopine, 121 Neb. 86, 236 N. W. 158.

As stated in Reams v. Clopine, *supra:* "The pleadings and judgment, but not the opinion of the appellate court, may be introduced in evidence to support a plea

of res judicata." However, under the circumstances here shown, that would not be necessary because the trial court was duty bound to take judicial notice thereof. See Cover v. Platte Valley Public Power & Irr. Dist., *supra.* In such circumstances it is the trial court's duty to determine the legal effect thereof and, if necessary, instruct the jury in regard thereto. The legal effect thereof is not a question for a jury to determine. Otherwise, where a plea of res judicata is made, the pleadings and judgment relied on must be introduced in evidence for the benefit of the trial court in order for it to determine the legal effect thereof.

Appellant contends several of the instructions given by the court erroneously submitted the case to the jury. "A litigant is entitled to have the jury instructed as to his theory of the case as shown by pleading and evidence, and a failure to do so is prejudicial error." McKain v. Platte Valley Public Power & Irr. Dist., 151 Neb. 497, 37 N. W. 2d 923.

Some of the contentions in regard to instructions are clarified by what has been held herein. Others relate to issues which it will no longer be found necessary to submit. The rest of the contentions herein made by either side we do not find it necessary to discuss and answer in view of what has been held herein.

We reverse the judgment of the trial court and remand the cause with directions to sustain the appellant's motion for new trial.

REVERSED AND REMANDED.

MESSMORE, J., concurring.

I concur in the majority opinion. However, to be consistent with our opinions covering the subject matter as set forth therein, I am convinced that the principle of law announced in the case of Ledingham v. Farmers Irr. Dist., 135 Neb. 276, 281 N. W. 20, is in conflict with the case of Shepard v. City of Friend, 141 Neb. 866, 5 N. W. 2d 108, and the instant case.

I am unable to draw the distinction between Leding-

ham v. Farmers Irr. Dist., *supra*, and the instant case. Consequently, I believe the case of Ledingham v. Farmers Irr. Dist., *supra*, should be overruled because it is in direct conflict with the principle of law announced in the instant case and the opinions of this court covering the same type of subject matter. See 26 A. L. R. 2d, § 5, p. 451, § 9, p. 460.

SIMMONS, C. J., dissenting.

The court, in my opinion, reaches a conclusion here that is unsound and unjust. In doing so it ignores many of our decisions of long standing, overrules in effect several decisions to which no reference is made, and finally reaches a revolutionary construction of a long-established and construed provision of our code of civil procedure.

The right of the plaintiffs to assert and have tried the issue of damages here involved is a valuable property right. It is proposed that it be largely denied. The basis of the denial is a procedural rule which is sound when properly applied. If there be doubt as to the application of the rule, we should follow that which protects and does not deny a property right. Here, as I see it, it is proposed that the rule be erroneously stated and applied, with the result that a grave injustice is to be done not only to these plaintiffs but to others that hereafter may be similarly situated.

A summary statement of the litigation involved is necessary. All italics appearing herein indicate emphasis supplied by me.

In Bahm v. Raikes, 160 Neb. 503, 70 N. W. 2d 507, the Wischmanns and others proceeded in equity to secure "an injunction, preventive and mandatory" to abate a nuisance. That was the only issue tried in the district court and in this court on trial de novo. There was no issue of damages pleaded, attempted to be proven, or determined.

In the instant case the Wischmanns brought a law action to recover for destruction of crops, for preventing

planting and harvesting of crops, for loss of livestock, and for damages to fences. 167 Neb. 251, 92 N. W. 2d 708. They did not seek to recover damages to land. So the former litigation was solely an action in equity for an injunction. The instant case is solely an action at law for the recovery of property damage, excluding damage to land.

Of course in the injunction action damages to crops and land were shown as an incident to the proof of a right to injunction. It does not follow that evidence of damages to crops and land as a foundation for proof of damages was an issue or was determined in the former action. Our opinion in the first case makes no reference to damages as a recoverable item and of necessity they were neither proven or determined. It is elementary that there is a material distinction between the two kinds of proof. The court holds that the plaintiffs may not "split" their "cause of action and in separate actions ask for two different *types* of relief when each type of relief is fundamentally based on the same facts or cause of action."

As above pointed out, the facts to prove an injunction action may be in part the same as the facts to prove a damage action, but in other respects are materially different. The court fails to recognize that elementary fact.

Insofar as the prayer for "two different types of relief" is concerned the holding is directly contrary to our holding in City of Alliance v. Cover-Jones Motor Co., 154 Neb. 900, 50 N. W. 2d 349, wherein we held that the relief sought "is no part of the cause of action."

I submit that the court is in error on both of the premises on which it predicates this feature of its decision.

There is no dispute as to the correctness of the rule of law stated in the first syllabus point prepared by the court: "It is a fundamental principle of jurisprudence that material facts or questions which *were an issue* in

a former action, and were there admitted or judicially *determined*, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action."

That rule is by its terms applicable when a question has been "an issue" and "judicially determined" in a former action. The rule is not applicable to the situation which we have here. The quoted rule is taken from Blum v. Truelson, 139 Neb. 282, 297 N. W. 136. It in turn relies solely on a quote from an opening statement in American Jurisprudence which is now 30A Am. Jur., Judgments, § 371, p. 411. That it has no application here is shown by other statements in the following texts: "Where a second action is upon a different *claim, demand*, or cause of action, the established rule is that the judgment in the first action operates as an estoppel only as to the points or questions actually *litigated* and *determined*, and not as to matters *not litigated* in the former action, *even though such matters might properly have been determined therein*. Accordingly, the view is generally taken that before the doctrine of res judicata is applied in such cases, it should appear that the *precise question involved* in the subsequent action was determined in the former action." 30A Am. Jur., Judgments, § 373, p. 418. See, also, Burke v. Munger, 138 Neb. 74, 292 N. W. 53; State ex rel. Caldwell v. Lincoln Street Ry. Co., 80 Neb. 333, 114 N. W. 422, 14 L. R. A. N. S. 336; Slater v. Skirving, 51 Neb. 108, 70 N. W. 493, 66 Am. S. R. 444; Haines v. Flinn, 26 Neb. 380, 42 N. W. 91, 18 Am. S. R. 785; Gayer v. Parker & Son, 24 Neb. 643, 39 N. W. 845, 8 Am. S. R. 227.

"As far as subsequent proceedings under a different cause of action are concerned, the doctrine of res judicata is held not to apply to issues raised in the previous case which were not passed on by the court or jury in deciding it." 30A Am. Jur., Judgments, § 374, p. 421.

"If a matter was actually in issue in a former proceeding and judicially determined therein, the matter is conclusively settled by the judgment rendered in such proceeding. However, the conclusiveness of a judgment is confined to the thing in controversy, *or in issue* as determined *from the pleadings*." 30A Am. Jur., Judgments, § 375, p. 422.

"It is generally declared that a judgment operates as res judicata only with respect to matters which were necessarily involved or determined in the former proceedings, or only with respect to the facts and matters necessary to uphold the judgment." 30A Am. Jur., Judgments, § 377, p. 425.

"Questions passed upon in the opinion of a court in rendering a judgment are not necessarily within the doctrine of res judicata. The reasoning and opinion of the court upon a subject, on the evidence before it, do not have the force and effect of the thing adjudged, unless the subject matter is definitely disposed of by *the judgment* of the court." 30A Am. Jur., Judgments, § 380, p. 429.

"Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action, except as stated in §§ 69, 71 and 72. * * *A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action." Restatement, Judgments, § 68, p. 293.

Tested by these rules I submit that the stated rule here discussed has no applicability to the situation before us.

There is no dispute here about the rule stated in the second syllabus point prepared by the court: "Where cases are interwoven and interdependent and the controversy involved has already been *considered and de-*

*termined* by the court in former proceedings involving one of the parties now before it, the court has the right to examine its own records and take judicial notice of its own proceedings and judgments in the former action." It relates to *"inter*woven and *inter*dependent" controversies that have been *considered* and *determined.* There can be no contention here that the issue of property damage was interwoven or interdependent with the issue of injunction and most certainly property damage was not "considered and determined" by the court.

The fourth syllabus point as prepared by the court is as follows: "An adjudication by this court extends to all matters decided expressly or by necessary implication and not alone to the questions actually and formally presented but to all existing in the record and necessarily involved in the decision." This is quoted from Anderson v. Anderson, 155 Neb. 1, 50 N. W. 2d 224. The sole authority for it is Kuhns v. Live Stock Nat. Bank, 138 Neb. 797, 295 N. W. 818. What was the Kuhns case? It involved this rule: Matters expressly, or by distinct and necessary implication, *adjudicated* at a former hearing, will not be considered again in the same case. It turned upon the "law of the case" rule as the opinion clearly shows. Obviously it has no bearing here. What was the Anderson case? The first action was one to quiet title. The second action was one for partition. We stated: "* * * the over-all contention in the suit to quiet title to the land and in this partition action was and is the ownership of the land, * * *." Appellants "attempted *in each* of the actions to put in issue two questions of fact" which were *"both adjudicated* adversely to appellants in the suit to quiet title." On that statement of fact we held that the determination of the first case was "final and binding" in the second case.

We quoted the rule stated in syllabus point 1 by the court, and the rule here discussed. When Anderson v. Anderson, *supra,* is analyzed and its rules applied

to the question being decided, it gives no support to the position now taken by the court.

Syllabus point 5 as prepared by the court is as follows: "The plea of res judicata applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation and which the parties exercising reasonable diligence might have brought forward at the time."

Syllabus point 6 as prepared by the court is as follows: "A litigant may not be permitted to split a cause of action or present an issue for determination and avoid the effect of an estoppel by withholding proof of it."

Both are direct quotes from statements made in Anderson v. Anderson, *supra*. I have already discussed the fact situation that was being decided in the Anderson case. I refer now briefly to the authorities cited in Anderson v. Anderson, *supra*, to sustain the text:

Boomer v. Olsen, 143 Neb. 579, 10 N. W. 2d 507. The first syllabus point in that case is: "Whether a former judgment is a bar to an action ordinarily depends on whether the same evidence will sustain both the present and former action, *and when it appears that different proof is required*, a judgment in one of them is no bar to the other." If appears obvious that in a damage action "different proof is required" than in an injunction action to abate a nuisance. The second syllabus point in the Boomer case is: "Where the parties stipulated a single issue in the former action, a plea of res adjudicata is of no avail in a subsequent action between the same parties where it appears that *the issues are outside the scope of the stipulation.*" Here insert "pleadings in the first case" for "stipulation" and the rule is: Res judicata is of no avail in a subsequent action between the same parties where it appears that the issues are outside the scope of the pleadings in the first case.

At the expense of repetition I point out that there is no contention here that damages as such were an issue in the first case.

The next case cited is Williams v. Beckmark, 150 Neb. 100, 33 N. W. 2d 352. A mere statement of the facts of that case, taken from the opinion, shows it has no bearing on the question presented here: "The present action is between the same parties as the former. They both involved the recovery of accrued rentals and damages for the unlawful possession of the same property. The relevant evidence in the case at bar was practically identical with that in the former. The only difference in the two defenses was that in the former action defendant prayed for relief under the Occupying Claimants Act and for such other relief as might be just and equitable, while in the case at bar defendant sought only the latter relief."

The third and final case cited to sustain syllabus points 5 and 6 is Pettijohn v. County of Furnas, 150 Neb. 736, 35 N. W. 2d 828. This began as a tax foreclosure case resulting in a decree that all proceedings, including the treasurer's return of a public sale, were regular. Plaintiff later brought an action attacking the regularity of the proceedings. We held: "Under such circumstances the decree of the district court was a final determination of the issues before it and such decree is not subject to collateral attack." Plaintiff asserted a material alteration of the tax sale certificates. We held: "What we have heretofore said about collateral attack is applicable here. The plaintiff here was a defendant in the tax sale certificate foreclosure and was personally served with summons. If she had any defense to the action she was obliged to assert it there. The finding of the court that the tax sale certificates were properly and lawfully made, and entitled to be foreclosed, constitutes a final adjudication of that issue in so far as the parties to that action are concerned."

Accordingly I submit that syllabus points 5 and 6,

when analyzed in the light of the case decided and the cases cited to sustain the decision, do not support the application now given to them.

This brings us to syllabus point 7 as prepared by the court: ·"It is a well-settled principle of equity jurisprudence that, where a court of equity has obtained jurisdiction of a cause for any purpose, it will retain it for all, and will proceed to a final determination of the case, *adjudicate all matters in issue,* and thus avoid unnecessary litigation."

Here the court in applying the rule reads out of it the words "adjudicate all matters in issue." That is the material element in the rule.

The syllabus point is a quote from Schreiner v. Witte, 143 Neb. 109, 8 N. W. 2d 831. That case holds directly to the contrary of the application which the court now makes of the cited rule. There plaintiff brought an action in equity to foreclose a chattel mortgage. The defendant denied generally and by cross-petition advanced three causes at law: (1) Damages for breach of a partnership agreement; (2) a recovery of one-half of personal taxes; and (3) recovery for goods sold and delivered. Plaintiff answered the cross-petition by denying causes (1) and (2) and admitting cause (3). The court found for the plaintiff on his petition and on defendant's causes (1) and (2) and entered judgment for defendant on cause (3). The court denied a deficiency judgment. Plaintiff appealed. We held: "The defendant in the instant case submitted himself to a court of equity, set up his defense by way of cross-petition, and *affirmatively alleged damages,* that plaintiff was indebted to defendant for merchandise purchased and personal taxes paid by defendant." We followed that by a statement of the rule quoted as syllabus point 7. We then held: "The plaintiff in the instant case followed the correct procedure. The defendant is not now entitled to a jury trial. He voluntarily brought a law issue into the case. He had a right, if he was so minded, to file

his amended cross-petition for damages in this equity suit. *It was an independent cause of action, existing in defendant's favor, and would not be lost to him, or barred, if he had left it out of this suit.*"

I fail to see where the court gets support out of that decision.

The court quotes from Wheeler v. Brady, 126 Neb. 297, 253 N. W. 338, but does not dignify it by making it a syllabus point. I quote the quotation used by the court, with the unanswered question in my mind as to where the court applies that rule, or follows it, or gets support from it: " 'Any right, fact or matter *in issue, and directly adjudicated upon, or necessarily involved in, the determination of an action* before a competent court in which a judgment or decree is rendered upon the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether the claim or demand, purpose, or subject-matter of the two suits is the same or not.' "

Wheeler v. Brady, *supra,* originated as an action to quiet title to real estate. A deed was involved. The trial court held that the deed was testamentary in character and not executed in accord with the law pertaining to the execution of wills. We affirmed. Then the second action was brought *to reform the deed* and to quiet title by the defendant in the first action. We held: *"The former decision is not of course an adjudication that the contract cannot be reformed. That question was not presented nor considered at that time.* That suit only decided that the purported deed as it stood did not convey title to the real estate in question, because it was testamentary in character, but since it was not executed according to the law relating to wills, title to a portion of the property was quieted in the other heirs at law. The cases in which the fundamental principles of res judicata are discussed are legion. * * * The right of reformation was *not a right, fact,*

*or matter litigated in the first suit* 'and the judgment therein was not a bar to this suit." . .

. We cited the rule which the court quotes. It was taken from 34 C. J., Judgments, § 1154, p. 743. If an action to quiet title is not res judicata of an action to reform a deed and quiet title, then certainly an action in equity to enjoin a nuisance is not res judicata of an action for damages at law.

The court, after more discussion and quotations from decisions to which I shall refer presently, then holds that "the doctrine of res judicata includes not only the things which were determined in the former suit, *but also any other matter properly involved which might have been raised and determined.*"

About the first clause of this holding there is no dispute. I submit that the second clause (which I have emphasized) is contrary to the very decisions of this court which I have referred to herein and which the court quotes in part.

Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195, is cited and followed repeatedly in these cases. It holds that: "In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question *actually litigated and determined* in the original action, *not what might have been thus litigated and determined.* Only upon such matters is the judgment conclusive in another action."

I now refer to a series of our decisions that are exactly to the contrary of the rule now announced by the court.

Wilcox v. Saunders, 4 Neb. 569, was decided in 1876. In that action Saunders had sued Wilcox in equity for specific performance of a contract to convey land. In that action Saunders specifically prayed for damages to the land. The issue of damages was tendered. The trial court decreed specific performance and specifically

did not determine the issue of damages. The judgment became final. Saunders then sued Wilcox in tort for damages for trespass "upon the same premises in controversy in the former suit." So there was in that case first an equity action for specific performance and then a law action for damages. The court held as to the issue of damages that when the trial court, in the first action, dismissed the issue of damages *"they were left in the same condition precisely as if they had never been brought into the case."* In the case now being decided damages were never "brought into the case." The court held it was not necessary to decide whether or not damages "could have been joined" in the former action and that only questions "determined" remained determined. The court, however, considered the question and held that damages "might be" included in the former action.

In the second action *at law for damages,* Saunders secured a verdict and judgment. We affirmed the judgment. Wilcox v. Saunders, *supra,* is the earliest of our decisions on the matter. It has been repeatedly cited favorably. I shall refer to one of the decisions later. It has never been criticized or modified. There it stands since 1876. It is now ignored by the court.

I next go to Herpolsheimer v. Acme Harvester Co., 83 Neb. 53, 119 N. W. 30. In the body of the opinion we held: "Where *issue has not been joined* nor any trial had on the merits, the doctrine of res judicata does not apply." That exactly describes the situation in the instant case. In the syllabus point prepared by the court we stated: "Where cases are interwoven and interdependent and the controversy involved has already been considered and determined by the court in former proceedings involving one of the parties now before it, the court has the right to examine its own records and take judicial notice of its own proceedings and judgments in the former action."

In Bowker v. Drainage District, 102 Neb. 571, 168

N. W. 193, we held: "A judgment is not res judicata of a matter *not involved and tried* in the action. * * *." It is quoted with approval in Lincoln Nat. Bank & Trust Co. v. Grainger, 129 Neb. 451, 262 N. W. 11, wherein we held: "A judgment of a court of competent jurisdiction upon a question directly involved in one suit is conclusive as to that question in another suit between the same parties. *Such judgment will not so operate,* unless it appears either on the face of the record or is shown by extrinsic evidence that the precise question *was raised and determined* in the former suit."

I next cite Gulizia v. Royal Indemnity Co., 139 Neb. 832, 299 N. W. 220. In that case we followed Plattsmouth Bridge Co. v. Turner, 128 Neb. 738, 260 N. W. 562, and reaffirmed this rule: Judgment is *not res judicata* as to any fact at issue in subsequent action where neither *issues* nor parties are the same. In both of the above cases the parties to the second action were not the same as those in the first. We pointed that out in the opinion. We also pointed out that "neither were the issues *identical*" in the Plattsmouth case; nor "was the * * * liability of the insurer as to the claim * * * involved" in the Gulizia case. The opinion in the Gulizia case was written by the same judge who is the author of the instant decision.

The above rule was restated and followed in Kuhl v. School District, 155 Neb. 357, 51 N. W. 2d 746. The opinion was adopted by six of the seven members now on the court. Two of the six of us now adhere to our former decisions.

I now go to two of our decisions, which the court considered at length. They are Ledingham v. Farmers Irr. Dist., 135 Neb. 276, 281 N. W. 20, and Shepard v. City of Friend, 141 Neb. 866, 5 N. W. 2d 108.

I first take up Ledingham v. Farmers Irr. Dist., *supra.* This opinion was written by Judge William B. Rose, who for over a third of a century was one of the ablest judges to serve on this court. The court now under-

takes to distinguish the Ledingham case from the instant case by reaching the conclusion that damages were no part of the cause of action in the first case. However, the theory upon which it might have been written is not controlling and should not concern us.

In that decision we stated the contention of res judicata as follows: "Defendant urges the further defense that the cause of action in which equitable relief was granted to plaintiff in the former suit necessarily included the damages allowed herein and precluded recovery therefor in the action at bar. It is argued that the entire controversy involving the equitable relief granted and the subsequent recovery of damages in the present action at law was determinable in the former suit in equity and that the splitting of what defendant calls a single cause of action is condemned as wholly untenable."

It was that contention which the court decided and which in effect is the contention made here which the court now sustains. How did we decide it? We held: "*Damages were not pleaded, presented, proved or determined in the former case.* There is some diversity of judicial opinion on this subject in vast fields of litigation, but the better view seems to be that, in a situation like the present, the granting of an injunction is not necessarily a bar to an action at law for damages caused by the wrong enjoined."

The Ledingham case cannot be brushed aside by conceiving some other basis upon which it might have been decided and reach the same result.

In the Ledingham case we followed Perdue v. Ward, 88 W. Va. 371, 106 S. E. 874, 14 A. L. R. 539, "and cases cited in note in 14 A. L. R. 543." There can be no question from that annotation what was being decided. In Perdue v. Ward, *supra,* the court refused to follow Gilbert v. Boak Fish Co., 86 Minn. 365, 90 N. W. 767, 58 L. R. A. 735. The annotation shows that this case

is the "only authority" contrary to Perdue v. Ward—and this court followed Perdue v. Ward.

Our decision in the Ledingham case further rested on Chapman v. General Petroleum Corp., 152 Or. 147, 52 P. 2d 190. I quote two paragraphs from that opinion: "The defense is based upon two major propositions: (1) That res adjudicata precludes plaintiffs from recovering damages in the instant action for the reason that they had an opportunity to adjudicate such matter in the suit instituted in December, 1931; that equity, having assumed jurisdiction, was able to grant complete relief and thereby avoid a multiplicity of suits; (2) that there is no evidence to support the finding of the jury that plaintiffs had sustained damage in the amount awarded, or in any sum. * * * The authorities in other jurisdictions, relative to the applicability of res adjudicata in such cases, are in conflict (see cases in note 14 A. L. R. 543), but in this state it is not an open question. In Norwood v. Eastern Oregon Land Co., 139 Or. 25, (5 P. (2d) 1057, 7 P. (2d) 996), the identical point was decided adversely to the contention of the appellant herein. It will be remembered that the question of damages was not an issue in the equity proceeding. We see no need to restate the law." The language is applicable here. There Oregon followed the same authority that we followed in the Ledingham case and in their own decision in Norwood v. Eastern Oregon Land Co., 139 Or. 25, 5 P. 2d 1057, 7 P. 2d 996. The latter case was one where the plaintiff had a decree for an injunction. He then sued for damages. Res judicata was offered as a defense. The court held: "In White v. Ladd, 41 Or. 324, (68 P. 739, 93 Am. St. Rep. 732), it is said: 'The potency of a judgment as an estoppel concludes every fact necessary to uphold it and extends, not only to matters actually determined, but to every other matter which the parties might have litigated and have had decided as incident to and essentially connected with the subject matter of the litigation,

and every matter coming within the legitimate purview of the original action, * * *.'

"The evidence relative to the issue of damages was not essential to the validity of the decree for injunction. The question of damages was merely incidental to the main relief sought in the equity proceeding. It was not necessarily involved therein. *In the instant action there is a different claim or demand than was at issue in the injunction suit, hence the decree therein is no bar here.*" This language is applicable here.

The court refused to follow Gilbert v. Boak Fish Co., *supra,* and stated that the contra rule followed by it was in accord with the "weight of authority." It relied on Perdue v. Ward, *supra,* and cases cited in 14 A. L. R. 539.

The Oregon Court tied its decision to ours. It quoted at length from "the best statement of the rule" found in Cromwell v. County of Sac, *supra.*

We relied on and quoted from the Cromwell case in Hanson v. Hanson, 64 Neb. 506, 90 N. W. 208. We relied on it again in Gering v. School District, 76 Neb. 219, 107 N. W. 250. We described the Cromwell case as one "recognized by all text writers." We held that: "* * * where the second action is upon a different *claim or demand,* the judgment in the prior action operates as an estoppel only as to those matters in issue upon the determination of which the judgment was rendered."

Notwithstanding the direct positive refusal of this court to follow Gilbert v. Boak Fish Co., *supra,* on the precise issue here involved, the court now quotes from it with approval. The court's justification for so doing is that Gilbert v. Boak Fish Co., *supra,* was cited with approval in Brchan v. The Crete Mills, 155 Neb. 505, 52 N. W. 2d 333. It was so cited, but for a rule that is not in dispute here. The mere fact that the case was so cited does not justify the overruling, in effect, of the Ledingham case and the adoption of a contrary rule that was rejected after consideration of the precise question. I would adhere to the Ledingham case rule.

At this point it may be well to quote from 1 Am. Jur., Actions, § 103, p. 486, where under the title "Legal and Equitable Relief" the text states: "* * * although there is authority to the contrary, it is held that a suit for an injunction is not a bar to a later action for past damages on account of the thing enjoined, where there was no prayer for damages in the prior suit and no award of damages made." The "contrary" case is Gilbert v. Boak Fish Co., *supra*, which we refused to follow in the Ledingham case. The rule is that of Perdue v. Ward, *supra*, which we followed in the Ledingham case.

Before going to other cases of this and other jurisdictions, I cite other texts which are considered as authority.

In 50 C. J. S., Judgments, § 657, p. 102, this rule is stated: "A judgment on the merits, rendered in a former suit between the same parties or their privies, on the same cause of action, by a court of competent jurisdiction, operates as a bar not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action. In other words, he must present his whole case, extending his claim so as to embrace everything which properly constitutes a part of his cause of action or defense, and cannot bring a new suit to recover something more on the same cause of action.

"The general rule *does not mean*, however, that the prior judgment is conclusive of matters *not in issue or adjudicated*, and which were not germane to, implied in, or essentially connected with, the actual issues in the case, although they may affect the ultimate rights of the parties and *might have been presented* in the former action, and is not applicable to issues the trial of which rests within the discretion of the court. Moreover, it has also been held that the rule cannot properly be invoked as to an issue which *affirmatively ap-*

pears *not to have been determined by the judgment in* the former action."

Here our Wightman v. City of Wayne, 144 Neb. 871, 15 N. W. 2d 78 (a case cited by the court's opinion), is relied on. But that rule relates to the splitting of a cause of action, a situation erroneously assumed by the majority opinion to exist here. This is made clear by the following paragraph of 50 C. J. S., Judgments, § 658, p. 104: "As discussed supra § 657, the rule that a judgment is res judicata as to every matter which might with propriety have been litigated and determined in the action *does not mean* that a prior judgment is conclusive of matters *not in issue or adjudicated,* and which were not germane to, implied in, or essentially connected with, the actual issues in the case, although they may affect the ultimate rights of the parties and might have been presented in the former action. Accordingly distinct rights, claims, or demands of the parties growing out of the same subject matter, but which were not put in issue or necessarily involved or adjudicated in a prior action have been held not to be barred by the judgment therein." Here our Ledingham case is cited along with others from several jurisdictions.

I now desire to call attention to Triska v. Miller, 86 Neb. 503, 125 N. W. 1070, cited but not discussed in the majority opinion, The holding there is: "A judgment on the merits constitutes an absolute bar to a subsequent action founded upon the same *claim or demand,* concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the *claim or demand,* but also as to any other admissible matter which might have been offered for that purpose." It shows that the bar of the former action relates to the "claim or demand" and not the cause of action.

Woodbury v. Porter, 158 F. 2d 194, was an action for damages. Plaintiff in a former proceeding had secured an injunction. The defendant contended that there

was a splitting of causes of action. The court denied that contention. It held: "If the same evidence will support both actions there is deemed to be but one cause of action. Of course, the mere fact *that the same evidence may be admissible under the pleadings* in each action *is not necessarily controlling,* but even though the evidence may be admissible *and is in part the same,* but the subject matter is essentially different, the actions are not identical. *In the final analysis the test would seem to be whether the wrong for which redress is sought is the same in both actions.* (Citing case.) The mere fact that different demands may spring out of the same act or contract does not itself render a judgment on one a bar to a suit upon another. * * * The first suit was an injunction action, while the second suit was for damages. The pleadings in the action for damages would be wholly inadequate as a basis for an injunction. To sustain an action for injunction it would be necessary to plead and prove threatened violations of the act and it has been held that if it is clear that violations will not be repeated, an injunction cannot be obtained as the purpose of an injunction is to prevent continued wrongful acts rather than to redress past grievances. (Citing case.) No such pleading nor proof would be essential in the action to recover damages."

In Morency v. Plourde, 96 N. H. 344, 76 A. 2d 791, the court held: "Where damages in injunction proceedings are neither sought nor granted, the injunctive relief is not a bar to the law actions for damages on account of the thing enjoined." It relied on Woodbury v. Porter, *supra,* and Perdue v. Ward, *supra,* upon which we relied in the Ledingham case.

I now go to the case of Shepard v. City of Friend, *supra,* from which the court quotes and sustains the quotation by quote from Gilbert v. Boak Fish Co., *supra,* which I have discussed above.

The opinion in the Shepard case was written by Judge Yeager. Judge Yeager analyzed the Shepard case in

the, now withdrawn, opinion in this case in 167 Neb. 251, 92 N. W. 2d 708. The court does not now criticize his analysis of that opinion.

The court now quotes from parts of two paragraphs of that opinion. The quote appears in that part of the opinion which related to the following contention. It was used in answer to it: "It then becomes necessary for us to sustain the judgment of the district court unless it may be said, as plaintiffs contend, that this case comes within the rule that, where a party mistakenly chooses a remedy that is not available to him, he is not under the doctrine of res adjudicata barred from availing himself of the proper remedy."

The court ignores the question decided before we reached the above matter—and in doing so overlooks the fact that the issue now presented here was decided in the Shepard case contrary to the present decision.

In the second case the trial court, with reference to the decree in the first case, held: "'Said decree was more than a judgment that no enjoinable nuisance existed. It was, in effect, a determination that the defendants had a legal right to flowage and that *no liability for damage* therefrom existed in favor of the plaintiffs. This decree disposed of the primary issue of any claim for damages, namely, *liability for* damages, and therefore made it wholly *immaterial* and unnecessary to go into the matter of the *quantum* of the alleged damages.'" The trial court decided that the issue of damages had been determined in the first action. We affirmed on the following basis, citing our decisions: "The defense of res adjudicata becomes available when a question of fact has been put directly in issue in an action between the same parties or their privies *and an adjudication had thereon.* (Citing cases.) Under the doctrine of res adjudicata, when a question of fact *is once determined,* on the merits, that question is settled, so far as the litigants and those in privity are concerned. Such question when decided cannot be relitigated between the same parties

or their privies." Obviously that case is not the instant case, but the rules of law followed there determining the question of res judicata require a denial of the plea here. This is made clear at the conclusion of the opinion where we held *"if there was a finding of fact in * * * the equity action, or the action at law on the same issues of fact,* as were presented in the action * * * before the court, such finding would *be res adjudicata."*

I concur with Judge Messmore in his conclusion that the Ledingham case is in effect overruled by the court's present decision. To that I add that the opinion in Shepard v. City of Friend, *supra,* is likewise overruled on the issue here presented.

I now go to the "basis for the breadth of this rule" which the court now adopts. It is that because of the code provision there "has been a complete merger of legal and equitable remedies." The code provision is section 25-101, R. R. S. 1943, which is: "The distinctions between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing, are abolished; and in their place there shall be hereafter but one form of action, which shall be called a 'civil action.' "

The court quotes to sustain its rule Hopkins v. Washington County, 56 Neb. 596, 77 N. W. 53. The quoted provision is requoted here to show by emphasis the scope of that decision: "In this state there is but one form of action, to be called a 'civil action,' (Code of Civil Procedure, sec. 2); but the *distinction between law and equity is not abolished.* There is one form of action, in which either relief may be sought and obtained; and if the facts *pleaded and proved* demand, the rules of either law or equity, or both, *may be enforced."* Obviously we are not here presented with a case where facts were *pleaded and proved* in the former action. No one contends that such is the case. It is interesting to note that Wilcox v. Saunders, *supra,* is cited to sustain the rule. I have heretofore analyzed that decision, and

obviously it does not sustain the "breadth" of the rule now adopted. None of our subsequent decisions citing the Hopkins case give it that breadth.

The court says: "See, also, City of Beatrice v. Gage County, 130 Neb. 850, 266 N. W. 777." That case decides that in a "civil action * * * legal and equitable principles, either or both, *may be* enforced according to the facts * * *." It relies on the Hopkins case. I fail to "see" any expression of a "breadth" of a rule in that case nor where it in anywise is supporting the position taken by the court.

The court relies for its sole authority as to the "breadth of this rule" upon a statement taken from Restatement, Judgments, § 66, p. 282. This refers to the impact of code provisions on the questions here. Before discussing section 66 I desire to quote from the same authority: "Where a plaintiff obtains an equitable decree against the defendant by which the defendant is directed to do an act other than to pay money, the plaintiff's claim is not merged in the decree. * * * Since the original cause of action is not merged in a decree in favor of the plaintiff which is not a decree for the payment of money, the plaintiff is not thereby precluded by the doctrine of res judicata from maintaining an action at law or a suit in equity upon the original cause of action. * * * The rule that a judgment, whether in favor of the plaintiff or of the defendant, is conclusive in a subsequent action between the parties upon the *issues actually litigated* in the first action is applicable not only to judgments for the payment of money * * *, but also to judgments in actions other than for the payment of money." Restatement, Judgments, § 46, pp. 178, 180. So the Restatement gives the court no comfort except as to the code provision.

The court quotes from the comment under section 66 of Restatement, Judgments. It emphasizes the last sentence, and evidently accepts it as controlling. I quote the sentence preceding, as it described precisely

the rule sustained by the wealth of our decisions. It is: "In some States, although a court of equity *may award damages*, there is not such a merger of legal and equitable remedies that the plaintiff is compelled to seek damages in the equitable proceeding or be precluded from thereafter seeking damages in an action at law; *in such States if the plaintiff brings a suit in equity to enjoin the continuance of a tort and does not seek damages which he has suffered from the tort, he is not precluded from thereafter maintaining an action at law to recover damages.*"

Section 25-101, R. R. S. 1943, of our code of civil procedure was adopted in 1867. See Laws 1867, § 1, p. 71. There were earlier provisions when this state was a territory. So our code provision is now 92 years old. The parent code was adopted in New York over a century ago. It is a matter of common knowledge that many states have likewise adopted a similar code provision.

I call attention to the age of this provision and the fact that the court has been unable to find one adjudicated case that puts Nebraska and its code within the scope of the more "complete merger" rule which it now adopts. Nor has the court found one single text that does so. Nor has the court found an adjudicated case to support the rule it adopts.

I am aware that the court says "See, also, 2 Freeman on Judgments (5th Ed.), § 593, p. 1250." I have obeyed the mandate and have seen that section. It makes no reference to code provisions. It consists of three paragraphs. The first deals with the rule of Gilbert v. Boak Fish Co., *supra,* which as I have pointed out we have heretofore refused to follow. The second paragraph deals with the rule of Perdue v. Ward, *supra,* which as I have pointed out we followed in the Ledingham case. The third paragraph contains the language to which the court refers. It is: "Assuming that but a single cause of action is involved, whether the granting of equitable relief alone, in a case in

which legal relief is not sought, operates as bar to
future legal relief would on principle seem to depend
upon whether a court of equity would be bound to
grant such relief *if a proper case for it were made."*
2 Freeman on Judgments, § 593, pp. 1251, 1252. That
language assumes a "single cause of action" and a
"proper case" being made. That sentence is followed
by this: "If the matter be one resting *in the discretion
of the court,* in view of the somewhat different modes
of procedure followed in law and equity cases and the
*absence of a right to jury trial* in the latter, it would
seem that the failure of the plaintiff to present his
claims for legal relief *should not bar* a subsequent
action therefor. On the other hand *if the court would
have no alternative but to grant or deny legal relief on
the facts presented,* then it would appear to be the
plaintiff's duty to present all of his grounds for relief,
legal and equitable, in one action, on the general prin-
ciple that any grounds for relief not urged are barred."
2 Freeman on Judgments, § 593, p. 1252. I see no
support for either the "breadth of this rule" or for
a construction of the code provision in that citation.
The rule from Freeman, upon which the court relies,
then depends on whether or not a court has no dis-
cretion to grant or deny legal relief *"on the facts pre-
sented."* I emphasize this because of the concluding
phrase in the quoted rule "if a proper case for it were
made." But where a party, as here, neither pleads,
claims, or attempts to prove damages, how can it
be said that "a proper case" is made or the "facts pre-
sented."

The quoted sections of Restatement relate to "equi-
table claims or defenses." It makes no reference to
forms of action.

The court holds that because section 25-101, R. R. S.
1943, provides that there shall hereafter be "one form
of action" that there has been "a complete merger of
legal and equitable remedies."

But forms of action and legal and equitable remedies are not synonymous. 1 C. J. S., Actions, § 39, p. 1084, states: "Where the codes have done away with the formal aspects of the common-law forms of action and substituted a single form of action for the enforcement of civil rights, the substantive phases of such actions remain untouched."

In 1 C. J. S., Actions, § 1(d), p. 941, remedy is defined as follows: " 'Action' is also distinguishable from 'remedy,' in that the term 'remedy' includes various means of enforcing rights or redressing injuries other than by action."

In 1 Am. Jur., Actions, § 3, p. 405, it is stated: "Causes of action should be distinguished from remedies. The cause of action and the remedy sought are entirely different matters. The one precedes and, it is true, gives rise to the other, but they are separate and distinct from each other and are governed by different rules and principles. The cause of action should be distinguished not only from the remedy but also from the relief sought, which is no part of the cause of action." The same authority, § 5, p. 407, states: "It has been said also that the term 'action' is not as broad and inclusive as the term 'remedy,' which does not necessarily imply an action, being the means employed to enforce a right or redress an injury, usually by action, but not necessarily so."

If there is merit to the court's position it then must depend for the "merger of legal and equitable remedies" on the language in section 25-101, R. R. S. 1943, which provides that the "distinctions between *actions* at law and *suits* in equity * * * are abolished; * * *." Here the statute does not abolish or purport to abolish distinctions between *remedies* at law or in equity. It relates to distinctions between *actions* and *suits*.

I now return to the decision in Wilcox v. Saunders, *supra*. The precise question of the effect of the code provision was there determined, directly contrary to

the construction which the court now gives it. I point out that the verb "merge" now used by the court and the verb "blend" used by the court in the Wilcox case are synonymous.

As I have heretofore pointed out, Saunders sued Wilcox in equity for specific performance of a contract to convey land. He obtained a decree which became final. Saunders then sued Wilcox for damages for trespass committed upon the same premises involved in the former action. Saunders recovered a judgment in a jury trial. We affirmed. Wilcox contended that the former judgment was res judicata, relying on the code provision. Judge Gantt proposed to hold that the code provision was unconstitutional. He analyzed the act as follows: "First. The abolition of the distinction between actions at law and in equity. Second. The abolition of all forms of suits in equity as well as actions at law heretofore existing. Third. The substitution in their place of but one form of action, called a civil action; or in other words, *the merger of the two jurisdictions* and *the blending of law and equity in one form of action, called a civil action.*"

He proposed to hold: "* * * but an attempt to *blend* the two in respect to matters of substance and principle, it seems to me, would not only subvert the jurisdiction of the courts but would also be clearly repugnant to the constitution."

But the court did not agree with him. It held: "In regard to the power of the legislature, under the constitution of 1867, to *blend* law and equity cases in one form of action by the abolition of the distinction formerly existing between them, and authorizing their joinder in the same petition, we entertain no doubt whatever. On the contrary we think the authority to do all that the code provides in this particular is clear. * * * We cannot give assent to the notion that it was the design of the constitution to deprive the legislature of the authority to control the action of these

courts in *matters of mere practice,* so long as *no substantial right of a suitor* was taken from him. Parenthetically I point out here that a substantial right is taken from the plaintiff.)

"The code does not profess to abrogate that distinction, which in the very nature of things must always exist between legal and equitable rights and remedies, nor to deprive any person of as complete redress, for every conceivable wrong done to him in his person or estate, as he formerly could have had. But it does require that, whatever the nature of the right to be enforced, or the wrong to be redressed may be, whether such as formerly would have been cognizable in either a court of chancery, or in a court of law, the simple form of a 'civil action' must be followed, in which a plain statement of the material facts constituting the cause of action, or the defense, must be set forth in concise language, and without repetition. Thus while the ancient forms of action are now abolished, *all the various remedies known to the law still remain,* and are administered through the medium of the single 'civil action' of the code, quite as certainly and much more speedily, than they were under the former practice."

Quoting from Willard on Equity Jurisprudence, p. 43, the court held: " 'Relief may be obtained under the code in all cases where it could be granted before, whether at law or in equity. The subject of rights and wrongs remains unchanged. *The remedy to enforce them, or to prevent their violation, or to obtain satisfaction for their violation, still exists,* but under a different name. A civil action, nomen generalissimum, comprises within itself all the former actions both at law and in equity.' "

Here then is a direct holding that there has been no blending (merging) of the "remedy to enforce" legal or equitable rights. The court went on: "This is sufficient, we think, to show that, notwithstanding the two systems of procedure—the common law with its arbitrarily formal actions, of assumpsit, debt, detinue, tres-

pass, trover, and the like, on the one hand—and the chancery with its next to interminable bills, having their nine distinct sub-divisions on the other, together with their almost endless paraphernalia, have been dispensed with in this state, and by the act of June 19th, 1867, at the first session of the legislature under our former constitution, the two systems united in one single form of action,—still the constitutional jurisdiction of the courts was not thereby in the least abridged, but in complete harmony with both the language and the spirit of the code of civil procedure, yet remains as formerly, and extending to all *rights and remedies* of whatsoever nature, whether of chancery or common law cognizance under the former system. *The mere forms, it is true, have departed, but the entire substance of both jurisdictions is still preserved to us.*"

Here again is a direct holding that "rights and remedies" remain "as formerly"—only "mere forms" have departed.

The above decision was followed in Hart v. Barnes, 24 Neb. 782, 40 N. W. 322, where this statement is found: "The code has simplified the forms of procedure, and provides but one form known as a civil action, *but has not changed the rights and remedies of the common law.*" Contrary thereto the court now holds that legal and equitable "remedies" have been merged. The above decision was again followed in Hopkins v. Washington County, *supra*, from which the court quotes. So there can be no doubt that the court in the Hopkins case was not departing from the rule of Wilcox v. Saunders, *supra*.

The above decision was again followed in State ex rel. Wright v. Barney, 133 Neb. 676, 276 N. W. 676, wherein we held: " 'The Code provides that there shall be but one form of action which shall be denominated a civil action. This provision has not changed the substantive rights of the parties. The substance of the common-law rules of legal procedure, and the principles by which the different forms of actions were pre-

viously governed, still remain as before. As it has been said, the abolition of the common-law names has not and *cannot change* the essential character of judicial *remedies.* And the common-law names are still used in Code states for convenience.' " The court now holds that the legal and equitable remedies have been changed and merged.

State ex rel. Wright v. Barney, *supra,* was quoted with approval in First Nat. Bank of Wayne v. Gross Real Estate Co., 162 Neb. 343, 75 N. W. 2d 704, in which we held: "By section 25-101, R. R. S. 1943, this distinction was abolished. The statute however did not abolish either the distinction between legal and equitable rights or the methods necessary to assert or defend respectively those rights."

It was again cited with approval in Fuchs v. Parsons Constr. Co., 166 Neb. 188, 88 N. W. 2d 648.

So we have an unbroken line of decisions beginning with Wilcox v. Saunders, *supra,* decided in 1876, down to and including the opinion in Fuchs v. Parsons Constr. Co., *supra,* written by Judge Boslaugh and decided in 1958, all sustaining a rule contrary to that which the court now adopts.

I do not favor cutting down or overruling all of the established precedents of this state construing and applying section 25-101, R. R. S. 1943. I submit that there has not been a "complete" or even a partial merger of legal and equitable remedies as a result of the adoption of the code provision.

In view of the number and definiteness of our holdings it would not seem necessary to cite texts on the matter. The subject is discussed in 1 C. J. S., Actions, § 55, p. 1168. I venture to quote from that authority: "While there has been some uncertainty and diversity of opinion, particularly in the earlier cases, as to the exact nature and extent of the change thereby effected, it is well settled that it is not so extensive as the broad terms of the provisions might imply. Without question

the mere formal distinctions have been abolished, but this seems to be practically all that has been effected, it being said that the distinction between law and equity is as naked and broad as ever."

Under the latter text statement in 1 C. J., Actions, § 176, p. 1047, the case of Wilcox v. Saunders, *supra*, is cited.

In 1 Am. Jur., Actions, § 56, p. 448, the rule is stated as follows: "In short, the effect of constitutional and statutory provisions for one form of civil action, whether the cause of action is in its nature legal or equitable, is that while all relief is sought in the same way from the same tribunal, the distinction between law and equity is as naked and broad as ever, and the plaintiff, to be entitled to the equitable interposition of the court, must show a proper case for the interference of a court of chancery."

Wilcox v. Saunders, *supra*, definitely decides that section 25-101, R. R. S. 1943, did not create a complete "merger of legal and equitable remedies"—nor any in fact. It is directly contrary to the construction which the court now puts upon the code.

Wilcox v. Saunders, *supra*, now being in effect overruled, I submit the court is now directly confronted with the constitutional contention advanced by Judge Gantt. The court did not criticize that view in Wilcox v. Saunders, *supra*, but held it did not arise under the construction there given to section 25-101, R. R. S. 1943. As a result of the present decision the constitutional question is now here. The court ignores it.

All of our decisions mentioned in this feature of the dissent cover a period of over 80 years and 162 volumes of our reports. They are ignored by the court.

The rule now adopted must necessarily operate in a situation where an action at law is had, followed by an attempt to secure equitable relief.

Suppose in this case plaintiffs had known of their damages to personal property. The amount of the dam-

ages were ascertainable. Damages to land from the trespass were known but the amount not ascertainable until such time as the full effect of the trespass had become a tangible result. Suppose then they had brought an action at law to recover their ascertainable damages to personal property. They would have that right and on that issue have a right of trial by jury. However, not being able to presently ascertain the permanent damages to their land, except on a speculative basis, they withheld that issue. Likewise not knowing the full extent of the effect of the trespass, they withheld seeking an equity decree enjoining the trespass because they might not be presently able to establish a right to an injunction.

Under this decision, by suing for damages to personal property, they would of necessity be held to have forfeited their right to permanent damages to land and a right to enjoin a violation of their property rights. I cannot reconcile our decisions with such a result or deem it to be a proper decision by a court administering justice according to law.

I now return to one sentence from Freeman on Judgments which the court suggests be seen. It is this: "If the matter be one resting in the discretion of the court, in view of the somewhat different modes of procedure followed in law and equity cases, *and the absence of a right to jury trial in the latter,* it would seem that the failure of the plaintiff to present his claim for legal relief should not bar a subsequent action therefor." 2 Freeman on Judgments (5th Ed.), § 593, p. 1252.

I suggest the court should follow the test which it recommends.

It is axiomatic that a remedy at law involves the right of trial by jury. A remedy in equity does not involve that right. These distinctions have been recognized in our decisions without number. They have a constitutional base.

If this decision means what it says, it means that

these distinctions are now wiped out. We no longer have actions at law or suits in equity—they have been *completely* "merged" in a civil action.

Webster's new Twentieth Century Dictionary (2d Ed.), p. 1127, defines merge as "to unite indistinguishably." The rule now adopted makes no exceptions. The court makes no exceptions, and none could be made in the "breadth of this rule" that there has been a complete merger of legal and equitable remedies.

What about the constitutional right of trial by jury in what was formerly an action at law and is now indistinguishably merged in a civil action?

The court is now confronted with not only the constitutional question raised by Judge Gantt in Wilcox v. Saunders, *supra,* but also the constitutional right of trial by jury so vigorously asserted, and as I saw it unduly extended in scope by the court, in Gillespie v. Hynes, *ante* p. 49, 95 N. W. 2d 457. There the court held that where a litigant invoked an equitable remedy (now merely a civil remedy), and a claim for a money judgment was advanced (formerly a law remedy, now merely a civil remedy), and the court denied equitable relief (now merely civil relief), a party could not, by remaining silent, waive his constitutional right of trial by jury as to the law issue (now merely a civil issue).

It is inconceivable that the court intends by this decision to "unite indistinguishably" what were formerly remedies at law and remedies in equity. I challenge its constitutional power to do so. If language means anything by holding that there has been a "complete merger of legal and equitable remedies" in this state, the court now has accomplished that result.

Using the terms which up to now were commonplace, the court now compels a litigant to go into equity, and if equitable relief is granted, he must waive his constitutional right of trial by jury of the law issue; but if he desires to secure a jury trial of the law issue he must thereby waive his equitable rights.

YEAGER, J., dissenting.

I concur in the dissent of Simmons, C. J., which has been filed in this case. I also dissent from that phase of the majority opinion which rejects the opinion originally adopted herein.

I shall direct my remarks first, not in repetition of what has been said in the dissent of Simmons, C. J., but to the disclosure of the reasonably anticipated consequences of the majority opinion. I take the view that this majority opinion, in addition to its own immediate mischief, contains the potential for broad and far-reaching mischief and confusion which will inevitably rise to plague the bench and the bar. This mischief may be readily demonstrated by some pertinent observations and related questions.

If this opinion is allowed to stand, what becomes of the right to trial by jury? Is the right to trial by jury abolished in cases where equitable and legal rights must be asserted in the same action? If a jury is to be called, must there be one hearing without the jury and another with one in attendance? If a jury is to be called, must it be done as a matter of right of the parties, or must there be a demand in order to secure a jury, and if no demand is made, is it necessary that this be regarded as a waiver? These are all questions which have not been answered which will require answers if this departure from traditional, well-established, and long-uninterrupted procedures is allowed to obtain.

Assuming that as regards the matters involved in this case and in Bahm v. Raikes, 160 Neb. 503, 70 N. W. 2d 507, the plaintiffs in Bahm v. Raikes, *supra,* had instituted action at law for damages instead of an action in equity to have destroyed the causative factor and had succeeded in recovering damages, but the causative factor was continued, would they, because they did not join their equitable right with their legal right, be barred from separate action in equity thereafter to have elim-

inated the causative factor? Would the action at law be res judicata of an action in equity?

The majority opinion holds that the decree in Bahm v. Raikes, *supra,* since no claim for damages was presented in that case, is res judicata and prohibits an action for damages caused by the wrongful acts of defendant which were enjoined. Despite this, however, it grants the right to assert that part of the pleaded cause of action relating to the period after February 1954. If the decree became res judicata for the reasons given in the majority opinion, why is it not res judicata as to the period after February 1954 as well as before? If the theory presented by the majority opinion is correct, does not consistency require the application of the rule to all periods? The relief sought in Bahm v. Raikes, *supra,* had reference to a situation involving past, present, and future injury and damage growing out of an existing and continuing condition. Wherein lies the power of this court to make a separation and division of this claim or rather failure to assert a claim? Other questions of related character could be asked but I think these are sufficient to demonstrate my concern.

I do not know what the answers to these questions should be and I decline to try to predict what they will be, but I am sure that the mischief and confusion which they foreshadow can all be avoided, without price or sacrifice in the area of either law or equity, by adherence to the principles set forth in Wilcox v. Saunders, 4 Neb. 569, and consistently and assiduously adhered to thereafter until the adoption of the majority opinion in this case.

From this it becomes clear that I do not think that the majority opinion contains a proper basis for the decision in this case.

I am still convinced that the opinion which has been rejected contains the proper basis for consideration of the case by this court, and further that the ultimate conclusion and decision outlined therein is the only one

which is capable of support on the record made at the trial in the district court.

It was asserted in that opinion that there was no proof of causal connection between the damage alleged by the plaintiffs in their pleaded cause of action and any act or failure to act on the part of the defendant. That assertion is repeated herein. The authenticity of this assertion is challenged by the present majority opinion, but significantly only in general terms. There has been no effort to point to evidence from the witnesses, or otherwise, the legal substance of which is to say that the particular damage occurring within the period not excluded by the statute of limitations was caused by any act or failure to act on the part of the defendant. It is true that there is evidence of damage from water, but there was not even an effort made on the trial to trace the source of the water back to any act or failure to act on the part of the defendant. In this connection the following is repeated from the rejected opinion: "Inexplicably, however, the plaintiffs failed to offer any testimony or other evidence that any of these things were caused or came about by reason of the matters charged against the defendant in Bahm v. Raikes, *supra*, which was prohibited or commanded by the adjudication in that case, or that they were caused by any other act of omission or commission on his part."

Despite the statements made in the majority opinion, with assurance I rest my statements on what appears, or more correctly does not appear, in the bill of exceptions.

It is of course true that there was evidence of a general nature on the trial of the case that over a long period of years works of the defendant caused damage to lands and crops of the plaintiffs. It is likewise true that in Bahm v. Raikes, *supra*, there was evidence, the result of which came into this case under the law of the case theory, that over a long period of years works of the

defendant generally caused damage to lands and crops of the plaintiffs.

It might well be said that these two phases of evidence could be regarded as corroborative in character, provided of course that there was evidence disclosing the source of the thing which caused the particular damage claimed. But here there was not the primary evidence which is the basis for corroborative proof.

I earnestly insist therefore that the present majority opinion should have been rejected and the one rejected should have been allowed to stand.